**In the Matter of James L. COLEMAN, Debtor.**

**Bankruptcy No. 98–41249.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

March 31, 1999.

Ms. Barbara Braziel, Savannah, GA, for Debtor.

Mr. Richard Jennings, Mr. William F. Hinesley, III, Savannah, GA, for Creditor.

### MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Debtor's Chapter 13 case was filed on April 27, 1998. At the time of filing Debtor owned a 1995 Chevrolet Corvette which he valued at $21,775.00. First Liberty Bank was duly scheduled as a creditor holding a security interest in that vehicle holding a claim listed for $27,500.00, of which $21,775.00 was scheduled as secured and $5,725.00 was scheduled as unsecured. Debtor's plan proposed that regular post-petition payments on the 1995 Chevrolet be made directly to First Liberty as they came due. (Doc. 1, ¶ 4). In other words, the plan did not propose to reduce the amount of First Liberty's secured claim notwithstanding the fact that Debtor's schedules contended that claim to be undersecured.

On July 8, 1998, Debtor filed a modified plan which again contained the provision that First Liberty Bank would be paid direct with respect to its post-petition installment payments, but stated "pre-petition payments due to First Liberty shall be paid inside Chapter 13." (Doc. 12, ¶ 8). This provision apparently was included in response to First Liberty's claim that the obligation to First Liberty was a true lease and that the only permissible modification in the Chapter 13 plan would be to cure any pre-petition arrearages. On August 13, 1998, Debtor filed a second amended Chapter 13 plan which omitted any specific reference to First Liberty or the 1995 Chevrolet Corvette. Instead, it made provision for all secured creditors as follows:

Secured creditors shall retain liens securing their claims. Creditors who file claims and whose claims are allowed as secured shall be paid in full with interest except as otherwise set forth in this plan.

(Doc. 13, ¶ 2(b)). There was no other plan provision dealing with First Liberty's claim. First Liberty filed a claim in the amount of $25,867.69 asserting a security interest in the 1995 Chevrolet Corvette. No party in interest objected to the claim. At confirmation on September 29, 1998, the Debtor's plan was confirmed providing for payment in full on First Liberty's secured claim with interest. (Docs.16–17A).

On November 6, 1998, Debtor filed a modified plan to reduce his payments as a result of a reduction in pay and provided the following in paragraph 1(c):

Surrender the following property: Surrender the '95 Chevy to First Liberty and allow a deficiency claim.

(Doc. 19). The modification was occasioned by a reduction in Debtor's gross income from $4,166.00 per month at the time of filing to $3,425.00 and in his net income from $2,227.50 to $2,154.66. First Liberty Bank filed an objection to confirmation of the modified plan on November 20 and the matter was heard on December 1, 1998.

### Issues Presented

First Liberty contends in its objection that a post-confirmation modification to a Chapter 13 plan cannot reclassify a claim which was determined to be a fully secured claim at the time of confirmation, since such a modification is outside the literal terms of Section 1329(a). The Debtor contends that Section 1329(b) incorporates Section 1322(b), which in turn allows the modification of the rights of holders of secured claims, and thus makes this result permissible. The question is squarely posed: May a debtor's confirmed plan be modified after confirmation so as to reclassify an allowed secured claim and treat it as partially unsecured? Having reviewed applicable law, I conclude that it may not and I enter the following conclusions of law.

### CONCLUSIONS OF LAW

11 U.S.C. § 1329 provides as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the

trustee, or the holder of an allowed unsecured claim, to—

 (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

 (2) extend or reduce the time for such payments; or

 (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

 (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

Courts are split as to whether a plan can be modified to reclassify a secured creditor to unsecured status. *Compare In re Dunlap,* 215 B.R. 867 (Bankr.E.D.Ark.1997) (modification cannot reclassify claim from secured to unsecured); *In re Banks,* 161 B.R. 375 (Bankr.S.D.Miss.1993) (same); *and Matter of Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga. 1984) (*res judicata* bars reclassification) *with In re Rimmer,* 143 B.R. 871 (Bankr. W.D.Tenn.1992) (secured claim subject to post-confirmation modification to surrender collateral); *and In re Jock,* 95 B.R. 75 (Bankr.M.D.Tenn.1989) (reclassification allowed).

 The split of authority is occasioned by the statutory language of Section 1329(a)(1) which is "certainly subject to at least two interpretations: Either that the specific periodic payments may be increased or decreased or that the total amount of the payments on a claim may be increased or decreased." *Rimmer,* 143 B.R. at 875. The court in *Rimmer,* relying on the *Jock* opinion, held that the latter interpretation is correct. I disagree and follow the other line of cases which adhere to the former alternative: that Section 1329(a)(1) permits a post-confirmation modification only to alter the amount of specific periodic payments.

Section 1329(a)(1) provides that the plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." This section does not state that the plan may be modified to increase or reduce the amount of claims. This is of significance in relation to secured claims. Such claims are secured claims to the extent of the value of the collateral in accordance with Section 506(a) of the Code. Valuation of secured claims is adjudicated by the order of confirmation. A debtor's confirmed plan is res judicata as to claims determinations. *Banks,* 161 B.R. at 378.

Certainly, Section 1329(a)(1) could be clearer; however, it does not expressly permit a debtor to alter, reduce or reclassify a previously allowed secured claim. *See Dunlap,* 215 B.R. at 870; *Banks,* 161 B.R. at 378; *Abercrombie,* 39 B.R. at 179.

[A] straightforward interpretation of the rule in Code § 1327(a) that the "provisions of a confirmed plan bind the debtor and each creditor ..." is that it is binding on debtor and creditor, subject to a fair and justifiable modification of the amount or time of payments on the creditor's claim as the language of Code § 1329(a) provides— not a change in part of the claim from secured to unsecured with a resultant change in the total amount to be paid. The latter attributes to Congress an unlikely intention to give the debtors the option to shift to holders of allowed secured claims any loss in the value of collateral.

NORTON BANKRUPTCY LAW AND PRACTICE 2d, § 124:3 n. 79, p. 124–27 (1993).

Moreover, a construction of Section 1329(a)(1) that allows reclassifications of secured claims to unsecured status effectively reads the requirements of Section 1325(a)(5)(B)(ii) out of the Code. *In re Dunlap,* 215 B.R. 867, 870 (Bankr.E.D.Ark.1997). Once allowed, a secured claim is fixed in amount and status and must be paid in full. 11 U.S.C. § 1325(a)(5)(B)(ii). Thus a change in the amount of payment may be employed only to accelerate or to slow the rate at which the claim is paid, not to alter the amount of the claim. In other words, alter-

ing the amount or timing of payments on a secured claim cannot change the fact that, in the end, the full amount of the secured claim established, as of the effective date of the plan, must be paid. Two courts in this district have held that the phrase "effective date of the plan" in Section 1325(a) refers to a valuation as of the date of the filing of the petition. *See Johnson v. General Motors Acceptance Corp.*, 165 B.R. 524 (S.D.Ga.1994) (date of filing is "watershed date" at which to value collateral for purposes of cramdown); *cf. In re Green*, 169 B.R. 480 (Bankr.S.D.Ga. 1994) (Walker, J.) (for purposes of liquidation analysis, date of filing is effective date of the plan). To allow revaluation of a secured creditor's collateral utilizing another valuation date disregards the fact that, at filing, rights in the collateral are "fixed ..., the bankruptcy estate is created, and the value of the debtor's exemptions determined." *Johnson*, 165 B.R. at 528.

Section 1329(a)(1), therefore, cannot be read so broadly as to authorize the reclassification of claims. Such a modification subjects the secured creditor to the unilateral whims of a debtor throughout the life of the plan. Only the debtor, the trustee, and holders of allowed unsecured claims may bring a motion to modify a plan pursuant to Section 1329. A secured creditor cannot seek to classify its claim in the event that collateral appreciated, rather than depreciated, and to allow a debtor to revalue or reclassify the claim when the collateral has depreciated is inequitable. *Banks*, 161 B.R. at 378. It is unlikely that Congress intended to give debtors such wide latitude in dealing with the rights and interests of a secured creditor. *Banks*, 161 B.R. at 378; *In re Holt*, 136 B.R. 260, 261 (Bankr.D.Idaho 1992). I hold that Section 1329(a)(1) does not permit a debtor to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has use for it.[1]

 Further, reclassification is not permitted by subsection (a)(3). Debtor argues that the surrender of the vehicle is a "payment ... other than under the plan" for which an alteration in distribution is permissible. Under Debtor's approach, the amount of distribution to a creditor "can be altered not only by reducing the amount paid to a creditor due to payments received from outside the Plan, but also by reclassifying a previously secured claim as an unsecured claim." *See In re Stone*, 91 B.R. 423, 425 (Bankr.N.D.Ohio 1988) (*citing* 5 Collier on Bankruptcy, Sec. 1329.01 (rev. 15th ed.1988)). Again, this result reaches beyond the text of the statute. Section 1329(a)(3) permits a reduction in the distribution under the plan, but the reduction is limited to the amount of payments recovered from another source. If the car is surrendered or is the subject of an insurance loss, the claim is reduced by the amount of proceeds of the policy or the sale, but again, the secured status of the balance of the claim is unaffected.[2]

The only change allowed in a modification under subsection (a)(3) is to the "distribution" to a creditor from the Chapter 13 Trustee. This section was not intended to broadly allow reclassification of claims. The secured claim having already been allowed remains secured, "albeit ... reduced by whatever amount [the creditor] might receive from liquidation of its collateral." *Abercrombie*, 39 B.R. at 180. Such reduction would be a permissible modification under Section 1329(a)(3).

---

1. While it is true that a secured creditor could, in some circumstances, be granted an administrative priority claim under 11 U.S.C. § 503(b) for depreciation in its collateral, *see In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682 (11th Cir. 1993), *cert. denied*, 510 U.S. 1118, 114 S.Ct. 1069, 127 L.Ed.2d 388 (1994), it is equally true that the debtor could also invoke Section 503 to include repairs or maintenance of the collateral in the plan. *Banks*, 161 B.R. at 379 n. 4. No basis exists for shifting this burden to the creditor, rather than requiring the debtor to abide by the valuation assigned to the claim in the first instance.

2. Some courts allowing modification and reclassification after a creditor has repossessed collateral rely on the creditor's affirmative actions in seeking relief from the automatic stay. *See In re White*, 169 B.R. 526 (Bankr.W.D.N.Y.1994); *In re Anderson*, 153 B.R. 527 (Bankr.M.D.Tenn. 1993). That situation is not present in this case and this Court expresses no opinion on that issue.

Courts that reach a conclusion which permits revaluation and reclassification of allowed secured claims often rely on the argument that Section 1329(b) incorporates "the same requirements for confirmation as an original plan," or on the potential to accomplish a reclassification by dismissing the case and refiling. *Stone,* 91 B.R. at 425. These arguments are unpersuasive. First, a proposed modification does not, in fact, have to meet all the same requirements for confirmation as the original Plan. For example, the "disposable income" test of Section 1325(b) is not specifically incorporated into modifications. 11 U.S.C. § 1329(b). This approach also focuses solely on the cramdown provisions of Section 1322(b)(2), ignoring the prohibition imposed by Section 1325(a)(5) on post-confirmation valuations. Second, even though a debtor *might* accomplish the same result by dismissing the case and refiling, the possibility of taking an action under one section of the Code has no bearing on whether the same action can be taken under a different section. The language of Section 1307 allows the debtor to accomplish that result, while the language of Section 1329 does not.

For the same reason, I reject the reasoning of the *Jock* opinion that the fact "that the debtor could convert this Chapter 13 case to a Chapter 7, surrender the car to [the creditor] and (probably) discharge the deficiency is further evidence that Congress contemplated modification of a Chapter 13 plan to permit the surrender of collateral to the holder of an allowed secured claim." *Jock,* 95 B.R. at 77, 78.[3] Conversion or dismissal, while effectively allowing the debtor to reclassify a secured creditor's claim, also exposes the debtor to other risks and responsibilities, whereas no such tradeoff exists if the debtor is allowed to simply modify the plan. *See* NORTON BANKRUPTCY LAW AND PRACTICE 2d, § 124.3, 124–29 ("This view overlooks the fact that neither of these alternatives [dismissal or conversion] is what the debtor is proposing in a Code § 1329(a) modification, and that neither may be desirable for or available to the particular debtor."). It is more likely that Congress intended for the

debtor to face such a tradeoff if he desires to reclassify a secured creditor's claim. *See In re Algee,* 142 B.R. 576, 582 (Bankr.D.C.1992).

## CONCLUSION

Section 1329(a) expresses three discreet limited purposes for which a modification can be proposed. It does not expressly permit revaluation of collateral or reclassification of claims. Since Section 1329(a) is the gate through which all post-confirmation modifications must pass, the cramdown of a secured claim generally permitted by Section 1322(b) is proscribed post-confirmation and is subject to the limitations of Section 1325(b)(5) which fixes the amount of secured claims as of the date of filing of the case.

Any reclassification of a secured claim goes beyond the express scope of Section 1329 and offends Section 1327(a), which provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

In this case the secured creditor's allowed claim is to be paid directly to the creditor under the confirmed Chapter 13 plan. Because I hold that the remainder of the secured claim, after surrender and sale of the collateral, cannot be reclassified under Section 1329(a), Debtor must either continue to pay the balance of the allowed secured claim outside of the plan or must move this Court to add the secured claim to the plan. Neither of these proposals is contained with the modification filed with the Court.

■ Had Debtor either correctly valued the collateral at the outset, when the plan was originally confirmed, or funded the secured claim at a rate equal to the depreciation of the collateral, he would not be faced today with this quandary. However, the value of the collateral was fixed and this Court cannot revisit the valuation assigned as of the original confirmation. The secured claim has been allowed in a specific amount and the

---

3. Under this "could'uv" analysis, the same debtor sued in state court on a promissory note might seek dismissal because he "could'uv" filed a

Chapter 7 and discharged the debt, without ever having to resort to bankruptcy in the first place.

parties are bound by that adjudication, under 11 U.S.C. § 1327, since Section 1329 does not expressly permit reclassification.[4]

### ORDER

In consideration of the foregoing, IT IS HEREBY THE ORDER OF THIS COURT that confirmation of Debtor's Modified Plan After Confirmation is denied. IT IS FURTHER ORDERED THAT Debtor is given twenty (20) days to file any further modifications or this case will be dismissed.

4. The Code does provide for reconsideration of claims pursuant to 11 U.S.C. § 502(j), which allows reconsideration of a claim "for cause" and "according to the equities of the case." Reconsideration is accomplished by bringing a motion pursuant to Rule 3008 of the Federal Rules of Bankruptcy Procedure. Reconsideration might permit the debtor, under the equities of the case, to revisit what the original value actually was at filing (i.e., $21,775.00 or $25,867.00 *supra* at 398), but would not permit any further reduction even in the light of post-filing depreciation of collateral.