**In re Ronald L. GOOS and Christine L. Goos, Debtors.**

No. GG 97–10672.

United States Bankruptcy Court,
W.D. Michigan.

Sept. 28, 2000.

**417**

William J. Napieralski, Grand Rapids, Michigan, for Ronald L. Goos and Christine L. Goos.

Terry L. Hoeksema, Grand Rapids, Michigan, for General Motors Acceptance Corporation.

*OPINION REGARDING CHAPTER 13 POSTCONFIRMATION PLAN MODIFICATION*

JAMES D. GREGG, Chief Judge.

## I.

### ISSUE

May a chapter 13 debtor modify a confirmed plan by voluntarily surrendering collateral to partially satisfy a secured creditor's claim and classify the resulting deficiency as an unsecured claim?

## II.

### JURISDICTION

The court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334. In accordance with 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.), this bankruptcy case and all related proceedings have been referred to this court. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L) because it pertains to the allowance of a secured creditor's claim and whether the debtors' proposed postconfirmation modified plan should be confirmed.

## III.

### FACTS AND PROCEDURAL BACKGROUND

On December 9, 1997, Ronald L. Goos and Christine L. Goos, "Debtors," filed their voluntary joint petition for relief under chapter 13 of the Bankruptcy Code.[1] In their Schedule D—Creditors Holding Secured Claims, the Debtors listed General Motors Acceptance Corporation, "GMAC," as a creditor which was owed $22,000. The Debtors stated the debt was secured by a lien on a 1997 Buick LaSabre, "vehicle," valued at $18,000. The unsecured portion of GMAC's claim was scheduled at $4,000.

On December 23, 1997, the Debtors filed their chapter 13 plan. It stated: GMAC "has a security interest in Debtors' 1997 LaSabre ... [and] ... shall be paid the full value of its secured claim which Debtors state to be $18,000.00 plus the contract rate of interest through the Plan."

On March 3, 1998, GMAC filed a claim in the total amount of $23,136.80, which valued the vehicle at $20,850.00. The proof of claim requested postpetition interest at the rate of 9 percent (9%) per annum.

On March 24, 1998, the Debtors filed their Objection to Claim of GMAC. The

---

1. The Bankruptcy Code is contained in 11 U.S.C. § 101–1330. Unless stated otherwise, all statutory references are to the Bankruptcy Code, e.g., "§ ____."

Debtors requested that the value of the vehicle be established at $18,000. Subsequently the Debtors, GMAC, and the chapter 13 trustee stipulated that GMAC's claim was $23,165.48, the value of the vehicle was $18,000, and the allowed secured claim would be paid with an interest rate of nine percent (9%) per annum. On May 22, 1998, the Debtors' chapter 13 plan was confirmed and an order was entered.

On November 17, 1999, the Debtors filed their Amendment to Chapter 13 Plan. The amendment stated: "Debtors hereby abandon, effective immediately, to GMAC [the vehicle]. GMAC shall file any unsecured claim within ninety (90) days of the approval of this amendment."[2] On November 24, 1999, GMAC filed an objection to the Debtors' amended chapter 13 plan. GMAC asserted that per "the Trustee's records, there is still $13,185.00 in principal due and owing on this debt." GMAC also asserted that "[i]f after the vehicle is returned it is sold for less than $13,185.00, GMAC should be entitled to a *secured claim* for any deficiency and that the claim should not be considered unsecured as proposed by the Debtors' amendment." (Emphasis added.)

Subsequently, in accordance with a stipulation filed by the Debtors, GMAC, and the chapter 13 trustee, it was agreed that GMAC could take possession and sell the vehicle under the Uniform Commercial Code as adopted in Michigan. If there was a deficiency, GMAC would file a deficiency claim within ninety days after taking possession of the vehicle. If a deficiency claim existed, the court would determine whether that claim would be a secured claim or an unsecured claim.

The court approved the stipulation by order dated January 18, 2000. The order provided that if GMAC filed a secured deficiency claim, the Debtors could file an objection to that claim.[3]

On March 24, 2000,[4] GMAC filed its amended proof of claim after the vehicle was sold. That claim asserts a remaining secured claim in the amount of $7,439.00, with interest at nine percent (9%), and the balance of the claim, i.e., $5,394.49, as unsecured. Also on March 24, 2000, the Debtors filed an objection to GMAC's amended claim. The Debtors asserted "the claim in question should be a totally unsecured claim based upon the Debtors' rejection of the [vehicle] pursuant to an amendment of their Chapter 13 Plan."

The Debtors' objection to GMAC's amended claim was later scheduled for a hearing. Prior to the hearing, GMAC filed a response which asserted "[t]he Debtors caused the vehicle to depreciate through excessive wear and failure to repair [the vehicle]" and that GMAC, in accordance with the prior confirmed plan is "entitled to a secured claim in this matter of $7,539.00."

The Debtors filed their Memorandum in Support of Objection to Claim of General Motors Acceptance Corporation. Later, GMAC filed a Memorandum in Support of Claim of General Motors Acceptance Corporation. At a subsequent hearing, the court heard statements by opposing counsel, and took the matter under advisement. Because of the importance of the issue presented, and recognizing that there exists disparate conclusions in reported opinions regarding this issue, the court deter-

---

**2.** In the amendment, the vehicle is described as a "1997 Buick Skylark." Although the vehicle may be misdescribed in the amendment, this is of no consequence to this contested matter.

**3.** Apparently this procedure was utilized to preserve the parties' respective positions. If there was no deficiency after sale, or if GMAC failed to timely file a secured deficiency claim, there would be no issue to be deter-

mined by the court. However, if a secured claim was filed, the Debtors would decide whether to object, presumably based, in part, upon the amount of any asserted deficiency.

**4.** GMAC's claim was first filed on March 21, 2000. After the court clerk sent a Notice of Defective Claim, GMAC refiled its claim, in proper form, on March 24, 2000.

mined that a written published opinion is appropriate in this instance.

## IV.

## DISCUSSION

■ Whether to file a chapter 13 case is a decision to be made solely by debtors. Creditors cannot involuntarily compel a debtor to pay his or her debts in a chapter 13 case. § 303(a) ("[a]n involuntary case may be commenced only under chapter 7 or 11"). In this case, the Debtors chose to file for relief under chapter 13. Their rights and obligations are established by the statutory provisions in that chapter.

Chapter 13 permits a debtor to classify claims. § 1322(b). Indeed, except for non-modifiable claims pertaining to mortgages secured solely by real property, a chapter 13 debtor may "modify the rights of holders of secured claims." § 1322(b)(2). In this case, the Debtors' plan separately classified GMAC and sought modification of its rights regarding the vehicle. In their chapter 13 plan, the Debtors chose to retain the vehicle and "strip down" GMAC's secured claim to $18,000 and treat the balance as an unsecured claim. §§ 1325(a)(5)(B); 506(a). Although the Debtors *could have* decided to surrender the vehicle to GMAC, § 1325(a)(5)(C), the Debtors chose not to do so.

■ This court confirmed the Debtors' plan. The confirmed plan is binding upon the Debtors and GMAC. § 1327(a). GMAC's treatment under the confirmed plan was established without any ambiguity. GMAC was entitled to receive $18,000 (the stipulated value of the vehicle) with interest on the secured portion of the claim at nine percent (9%) per annum. §§ 1327(a); 1325(a)(5)(B)(ii). As a result of confirmation, GMAC could not demand a greater payment on the secured portion

of its claim. Likewise, the Debtors could not demand to pay any less. Courts often characterize this as the *res judicata* effect of a confirmed plan. "An order confirming a Chapter 13 plan is a final order; therefore, absent a timely appeal, such an order is res judicata, and the terms of the plan are not subject to a collateral attack." *In re Dunlap*, 215 B.R. 867, 869 (Bankr. E.D.Ark.1997) (citing *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir.1993); *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir.1989); 8 Collier on Bankruptcy 1327.02[1] (Lawrence P. King, 15th ed.1996)). *See generally Stoll v. Gottlieb* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474 (6th Cir.1992).

However, the Bankruptcy Code explicitly permits a debtor to modify a chapter 13 plan, notwithstanding *res judicata*. § 1329(a). Congress permits:

At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

Does the postconfirmation modification grant by Congress permit a debtor to voluntarily surrender [5] collateral to a secured creditor and reclassify any deficiency after

---

**5.** This opinion does *not* address the issue of when collateral is involuntarily taken from a debtor postconfirmation by a creditor's conscious decision to seek relief from stay and to sell the collateral to partially satisfy its se-

cured claim. In such an instance, a debtor does not seek plan modification and the legal analysis may be different. *See, e.g., In re White,* 169 B.R. 526 (Bankr.W.D.N.Y.1994).

the sale as an unsecured claim? The courts have disagreed; some conclude such a reclassification is permissible while others conclude the statute prohibits such a reclassification. *Compare, e.g., Matter of Day,* 247 B.R. 898 (Bankr.M.D.Ga.2000); *In re Waller,* 224 B.R. 876 (Bankr. W.D.Tenn.1998); *In re Anderson,* 153 B.R. 527 (Bankr.M.D.Tenn.1993); *In re Rimmer,* 143 B.R. 871 (Bankr.W.D.Tenn.1992); *In re Frost,* 96 B.R. 804 (Bankr.S.D.Ohio 1989); *In re Jock,* 95 B.R. 75 (Bankr. M.D.Tenn.1989); *In re Stone,* 91 B.R. 423 (Bankr.N.D.Ohio 1988); (all stating a debtor may use § 1329 to surrender a vehicle and reclassify any deficiency claim as unsecured) *with, e.g., Chrysler Financial Corp. v. Nolan,* 234 B.R. 390 (M.D.Tenn. 1999); *Sharpe v. Ford Motor Credit Co. (In re Sharpe),* 122 B.R. 708 (E.D.Tenn. 1991); *In re Meeks,* 237 B.R. 856 (Bankr. M.D.Fla.1999); *In re Coleman,* 231 B.R. 397 (Bankr.S.D.Ga.1999); *In re Dunlap,* 215 B.R. 867 (Bankr.E.D.Ark.1997); *In re Banks,* 161 B.R. 375 (Bankr.S.D.Miss. 1993); *Matter of Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga.1984) (all stating that § 1329 does not permit postconfirmation modification by surrender of collateral and reclassifying secured claim balance as unsecured).

This court agrees with those decisions which hold a debtor may not voluntarily surrender a vehicle postconfirmation and reclassify a secured creditor's deficiency after sale as an unsecured claim. The statutory language in § 1329(a) does not permit such a modification. *Chrysler Financial Corp. v. Nolan,* 234 B.R. at 394–95; *In re Meeks,* 237 B.R. at 860–61; *In re Coleman,* 231 B.R. at 401; *In re Banks,* 161 B.R. at 379. "The better and more consistent interpretation of § 1329(a)(1) permits debtors to alter the amount of their payment on a claim to accelerate or reduce the rate at which a claim is paid." *In re Meeks,* 237 B.R. at 860 (citing *In re Coleman,* 231 B.R. at 399).

This court also agrees with the commentary in a leading bankruptcy treatise.

[I]t is a non sequitur to say that Code § 1327(a) does not limit postconfirmation modifications of plans, because that provision is merely a statutory statement of a confirmed plan or a modified confirmed plan. Rather, a straightforward interpretation of the rule in Code § 1327(a) that the "provisions of a confirmed plan bind the debtor and each creditor ..." is that it is binding on debtor and creditor, subject to a fair and justifiable modification of the amount or time of payments on the creditor's claim as the language of Code § 1329(a) provides—not a change in part of the claim from secured to unsecured with a resultant change in the total amount to be paid. The latter attributes to Congress an unlikely intention to give to debtors the option to shift to holders of allowed secured claims any loss in the value of collateral suffered by a debtor of an extent sufficient to cause a change of mind by the debtor and a proposal to make a unilateral modification in the plan. [Citations omitted.]

Norton Bankruptcy Law & Practice 2d, § 124:3, at 124–27 and 124–28, n. 79.

■ Cases holding that a debtor may voluntarily surrender collateral postconfirmation and relegate any remaining deficiency claim as unsecured sometimes rationalize that this would be the result if a debtor converted the chapter 13 case to a chapter 7 case, *see, e.g., In re Jock,* 95 B.R. at 78, or if a debtor dismissed the case and refiled a second chapter 13 case, *see, e.g., In re Stone,* 91 B.R. at 425. What "could be" and "what is" are different. *Matter of Coleman,* 231 B.R. at 401, n. 3. Decisions have consequences. A debtor who files for chapter 13 relief cannot take advantage of the benefits that would be available *if* a conversion to chapter 7 took place. Unless the conversion actually occurs, no possible chapter 7 benefits are afforded to the nonconverting chapter 13 debtor. Even if a conversion were to occur, the Bankruptcy Code now mandates the effect thereof. § 348(f)(1)(B) ("valuations of property and

of allowed secured claims in the chapter 13 case shall apply in the converted case"). It seems highly improbable (and strange) that Congress would mandate that valuations shall remain effective in a case converted to chapter 7, yet permit a prior valuation, pursuant to a confirmed plan, to be defeated by a debtor's voluntary surrender of collateral and utilization of § 1329(a) to reclassify the remaining deficiency from secured to unsecured. Likewise, there is a price to be paid when a chapter 13 debtor first dismisses a case and then refiles another chapter 13 case.[6]

 Also, this judge believes that valuation of collateral in a confirmed plan is a two-edged sword. A secured creditor is unable to seek revaluation of collateral by a modification. § 1327; § 1329(a) (secured creditors are not included as parties who may seek a postconfirmation modification). Permitting a debtor to modify an allowed secured claim postconfirmation was not contemplated by Congress. § 1329(a); *In re Meeks,* 237 B.R. at 860. Thus, once a chapter 13 plan is confirmed, an undervaluation or an appreciation of collateral inures to the benefit of a debtor. To the contrary, an overvaluation will benefit a secured creditor and depreciation of the collateral will not detrimentally affect that creditor's allowed secured claim. Confirmation locks in both the collateral valuation and the respective rights of a debtor and a creditor which holds an allowed secured claim. § 1327; *see also* Norton, § 124:3 at 226 (August, 2000 supp.) ("The practical significance of these two interpretations of Code § 1329(a) relates to which party bears the risk that collateral will either be destroyed or substantially diminish in value postconfirmation. Under one view, the secured creditor bears such risk; the other view mandates the debtor faces such exposure.").[7]

For the reasons above, this court holds the Debtors may not modify their confirmed plan under § 1329(a) by voluntarily surrendering the vehicle to GMAC and reclassifying the deficiency balance on GMAC's allowed secured claim to an unsecured claim. A separate order shall be entered accordingly.

### V.

### CONCLUSION

 The Debtors' requested postconfirmation plan modification is denied. GMAC's amended secured claim is allowed over the Debtors' objection. The Debtors are obligated to continue paying the balance of GMAC's allowed secured claim in accordance with their previously confirmed plan. However, if the Debtors want to extend the time to pay the remaining amount of GMAC's secured debt, i.e., reamortize the remaining secured debt, they may do so upon filing another modification to their plan under § 1329. Also, if the Debtors choose to dismiss this case, or convert to a chapter 7 case, they have the right to do so.

---

6. As one example, the thirty-six month requirement to pay disposable income begins anew. § 1325(b)(1)(B).

7. This judge adopts the second approach. If GMAC sold the collateral for more than the remaining balance owed on its secured claim, could it keep the surplus? Of course not. The Debtors, or their estate, would be entitled to any excess amount received from the sale of the vehicle. §§ 522 and 541. GMAC is unable to collaterally attack the valuation of the vehicle established by the prior confirmed plan. Similarly, the Debtors should bear the risk that voluntarily-surrendered collateral might be sold for less than the remaining owed on the secured debt established by the plan.