**In re Cedric T. BARCLAY and Lavaria L. Barclay, Debtors.**

No. 00–41752–JSS.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

Aug. 9, 2001.

John M. Caraway, Jr., Talladega, AL, for debtors.

Mavis Willingham, Anniston, AL, Chapter 13 Standing Trustee.

### MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

This matter is before this Court on the Motion to Modify filed by the debtors. In the motion to modify, the debtors propose to surrender collateral in full satisfaction of a secured claim held by Riteway Auto. As discussed below, the proposed modification cannot be approved and is due to be disapproved.

### FACTS AND PROCEDURAL HISTORY

This Chapter 13 case was commenced by the filing of a bankruptcy petition on June 20, 2000. Accompanying the debtors' bankruptcy petition, the debtors also filed their required schedules, including Schedule D. This schedule listed the debtors' creditors holding secured claims. The schedule listed a debt owed to Riteway Auto Sales (hereinafter "Riteway") in the amount of $6,000.00. On that schedule, the debtors valued the collateral securing that claim, a 1992 Mitsubishi Diamante, at $3,500.00. On August 2, 2000, Riteway filed a proof of claim (Claim No. 3) for $5,049.43. On the proof of claim, Riteway stated the value of the collateral was $5,500.

The debtors' plan, as amended on December 13, 2000, proposed to pay Riteway the full amount of their claim, $5,049.43, plus 10% interest, as a secured claim. Payments were proposed at $107.30 for sixty (60) months. This case was presented for confirmation on January 9, 2001. With the Chapter 13 Standing Trustee's recommendation, after hearing, the debtors' Chapter 13 plan was confirmed. Exhibit A to the confirmation order set out Riteway's claim as a fully secured claim in the amount of $5,049.43. The order further set out the payments to be made by the debtors. These payments were the same as proposed in the debtors' plan.

Shortly after confirmation, on March 9, 2001, the debtors filed this Motion to Modify. In the Motion to Modify, the debtors proposed to surrender the 1992 Mitsubishi Diamante to Riteway in full satisfaction of its allowed secured claim. On March 29, 2001, Shon Dukes d/b/a Riteway Auto Sales filed an Objection to Motion to Modify Plan. In the objection, Riteway averred it was unaware of the present condition of the vehicle proposed to be surrendered. Riteway objected to any surrender in full satisfaction of their secured claim until the condition of the vehicle could be determined. The proposed modification was presented at a hearing on April 17, 2001, at which time, on motion it was continued to May 15, 2001. At the hearing in May, the Court took the matter under submission.

## JURISDICTIONAL GRANT

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. Within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(A), (L), and (O), this is a "core proceeding." Bankruptcy judges may hear and determine all core proceedings arising under Title 11. Jurisdiction also exists by the standing, general order of reference from the District Court.

## CONCLUSIONS OF LAW

Increasingly in this division, debtors move to modify confirmed plans in order to surrender collateral securing claims. In most instances, as here, the debtor is moving to surrender the collateral and treat said surrender as full satisfaction of the secured claim. As the debtor is seeking to treat the surrender as full satisfaction, this case is a little different from the numerous other published cases concerning modification by surrender.

Any discussion concerning modification must begin with 11 U.S.C. § 1329, which is the bankruptcy statute covering modifications of confirmed plans. That statute provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329.

■ The debtors are proposing to modify their Chapter 13 confirmed plan pursuant to § 1329(a)(1) by surrendering the vehicle. Surrendering the vehicle will constitute a one-time increase in the amount of payments of this particular secured class provided for by the plan.[1] By surrendering collateral, a payment is being made in addition to the regular plan payment.[2] The increased payment is the delivery of the collateral. *See* BLACK'S LAW DICTIONARY 1129 (6th ed.1990) (defining "payment" as "the delivery of money or

---

**1.** The debtors' confirmed plan included a class for secured claims (Class 3). The class consisted solely of the claim of Riteway. Because the class consisted of a single secured claim, the Court need not discuss the ramifications of a § 1329(a)(1) modification on a class consisting of more than one claimholder. *See In re Sharpe*, 122 B.R. 708 (E.D.Tenn. 1991) (section 1329(a)(1) does not permit individualized treatment of class members); *cf. In re Rimmer*, 143 B.R. 871 (Bankr.W.D.Tenn. 1992), *overruled by Chrysler Financial Corporation v. Nolan (In re Nolan)*, 232 F.3d 528

(6th Cir.2000) (each secured creditor is a separate class of the plan).

**2.** Contrast this type of surrender to a modification which alters a plan after a secured creditor has repossessed collateral after being granted relief from the automatic stay. A modification after the creditor has possession would fall under § 1329(a)(3) as it would alter the amount of the distribution to a creditor to the extent necessary to take account of any payment (*i.e.* the vehicle) of such claim other than under the plan.

*other value* by a debtor to a creditor")(emphasis added). As the collateral can only be surrendered once, it is a one-time increase in payments. Therefore, under the express language of § 1329(a)(1), this type of modification (surrender) is allowed by the Bankruptcy Code. Although there has been a great amount of debate concerning the consequences of a surrender, this Court has been unable to find a single case which precludes modification by surrender under § 1329(a).

We now turn to the aspect of this case which makes it somewhat unique from the vast majority of cases addressing this issue. The debtors propose to surrender the vehicle in full satisfaction of Riteway's secured claim. In the majority of cases, the debtor proposes to surrender the vehicle and to treat any deficiency as an unsecured claim. *See infra.* In those cases, the issue is whether the deficiency claim can be treated as an unsecured claim. Here, under the debtors' argument, there would be no deficiency claim to treat as unsecured.

Although logical, the debtors' argument is flawed in its basic premise: that the collateral in question is valued at confirmation in order to determine the amount of the secured claim. 11 U.S.C. § 506(a). Essentially, the two numbers, secured claim and value, are the same. A valuation is attached either through contested means (adversary proceeding or claim objection) or consensually (without objection to the proof of claim). Under either scenario the value is established at confirmation. Claimholders have full opportunity to contest the valuation of the collateral and are bound to any valuation which results. Having attached a value, when the debtor proposes to surrender the vehicle, it is that value which is applied to the secured claim. Since the secured claim is based upon the value, any surrender would

necessarily pay the secured claim in full. Consequently, the claimholder would bear the risk of loss of value from the date of confirmation to the date of surrender.

The problem with the debtors' analysis lies with the valuation to be used. Section 506(a) provides that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). In other words, value must be established for the purpose the collateral is to be used. "[The] need to look to the purpose of the valuation appears to have achieved virtually unlimited acceptance." 4 COLLIER ON BANKRUPTCY § 506.02[6][a] (rev. 15th ed.1996).

The seminal case on the issue of valuation is *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 1884–85, 138 L.Ed.2d 148 (1997). The Supreme Court stated the first question when determining value is the proposed disposition or use of the collateral as set forth in the plan. Proposed disposition or use "is of paramount importance to the valuation question." *Id.* at 962, 117 S.Ct. 1879. The Court went further to state "The 'disposition or use' of the collateral thus turns on the alternative the debtor chooses—in one case the collateral will be surrendered to the creditor, and in the other, the collateral will be retained and used by the debtor." *Id.* From this language it is clear that the valuation to be used is determined by the debtor's proposed use of the collateral. As the debtors in the case being considered proposed to retain the collateral, the valuation used at confirmation was replacement value as directed by the Supreme Court in *Rash.*

However, if the debtor's proposed use of the collateral had been surrender, a differ-

ent valuation method would have been used. *Id.* The valuation would not be replacement value, but instead, the method of valuation would be foreclosure value. *Id.* Under *Rash*, it can be clearly seen how critical the proposed disposition is when considering valuation. It is the application of this principle which causes the debtors' argument to fail in this case.

When a debtor proposes to modify a plan to surrender collateral which was originally valued in a retention context, the valuation must change. The proposed disposition has changed and thus the method of valuation must change as well. "From the creditor's perspective as well as the debtor's, surrender and retention are not equivalent acts." *Id.* at 962, 117 S.Ct. 1879. As a result, the two valuation amounts will more than likely be different.[3] Because the amounts are different, the debtors' argument that the amount to be applied to the secured claim by surrender (as determined by the value of the collateral as established at confirmation) is the same as the amount of the secured claim is incorrect.

The debtors could argue that the valuation decided at confirmation is binding upon the parties in a post confirmation modification motion by *res judicata*. This argument fails for a variety of reasons. The first is the effect of § 1329 which specifically allows parties to avoid the binding effect of confirmation orders in certain, set, and enumerated ways. *Fairchild v. Lebanon Production Credit Ass'n*, 31 B.R. 789, 795 (Bankr.S.D.Ohio 1983) ("A determination of the amount of a secured claim in one aspect of a bankruptcy proceeding is not necessarily *res judicata* in other aspects of that proceeding."); *In re BBT*, 11 B.R. 224, 229 n. 10 (Bankr.D.Nev.

1981) ("Of course, the value determined in the light of the purpose of vacating the automatic stay may not be the same as the value for another purpose such as confirmation of a plan."); and *In re Cason*, 190 B.R. 917, 925 (Bankr.N.D.Ala.1995) (There can be several valuations in the course of a case. "Nothing in § 506 mandates that the value of collateral be fixed in a single valuation for ALL purposes.") (emphasis in original).

Another reason why this argument fails is that the issue regarding the value of the collateral in a surrender context was never determined at confirmation. For *res judicata* to apply, four prerequisites must be met: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001); *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir.1992); and *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.1990). Applied in this context, the fourth prerequisite is missing. The "cause of action" in the confirmation context concerned the value of the collateral with the proposed disposition being retention of the collateral by the debtors. The "cause of action" in the modification context concerns value of the collateral with the proposed disposition being surrender of the collateral by the debtors. These two "causes of action" are not the same as required for *res judicata* to apply. Therefore, the valuation based upon a retention basis cannot be *res judicata* to the finding of value on a surrender basis.

---

**3.** The Court is cognizant that in some situations, it is possible, if unlikely, the replacement value may be the same as the foreclosure value. Likewise, in some situations, the foreclosure value may actually be higher than the replacement value.

The Court could stop here and simply disapprove the modification as proposed by the debtors. However, this could give the impression surrender is not an acceptable form of modification. To the contrary, surrender is perfectly acceptable, but the valuation must change. Were the debtors to propose surrender and apply different valuations, the question then turns on how to treat the modification.

Since surrender would call for a foreclosure valuation, which is generally lower than a replacement valuation, when applied to the amount of the secured claim, the result is usually a deficiency claim. "This deficiency is the balance of the secured claim that was not paid by the debtor's plan payments and by the net proceeds from the sale of the collateral." *In re Johnson*, 247 B.R. 904, 907 (Bankr. S.D.Ga.1999). In the vast majority of cases concerning modification through surrender, there is a corresponding deficiency claim. *In re Zieder*, 263 B.R. 114 (Bankr. D.Ariz.2001); *In re Conley*, 2000 WL 1805324 (Bankr.E.D.Va. September 28, 2000) (deficiency left after application of $5,000 "surrender value"); *In re Smith*, 207 B.R. 26 (Bankr.N.D.Ga.1997); *In re Rimmer*, 143 B.R. 871 (Bankr.W.D.Tenn. 1992) (the asset is not worth the equivalent of the remaining secured debt); *In re Stone*, 91 B.R. 423, 425 (Bankr.N.D.Ohio 1988); *In re Williams*, 108 B.R. 119, 121–22 (Bankr.N.D.Miss.1989); *In re Banks*, 161 B.R. 375 (Bankr.S.D.Miss.1993); *In re Dunlap*, 215 B.R. 867 (Bankr.E.D.Ark. 1997) (at surrender, creditor only recovers the depreciated wholesale value). These are just a few of the many cases concerning surrender of collateral post confirmation. The Court was unable to find a single case which supports the debtors' argument that the modification by surrender would not result in a deficiency claim. In fact, about the only thing all the courts which have considered modification by sur-

render have agreed upon, is the existence of a deficiency claim. The treatment of the deficiency claim has caused the most disagreement between the courts considering the issue.

■ To answer this question, we turn to the great body of case law developed on this issue. There have been basically two different approaches to the issue. They both hinge upon the propriety of reclassifying or redetermining the claim after the surrender. While there has been a great number of cases on this issue, especially from bankruptcy courts, there is no controlling case in this circuit. To this Court's knowledge, only one circuit, the Sixth Circuit, has addressed the issue.

Judge Lundin authored the case which seems to be the signpost on this issue, *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn. 1989), *overruled by Chrysler Financial Corporation v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000). The cases that have followed have all either followed Judge Lundin or the approach taken by the Sixth Circuit in *Nolan*. *Jock*, and its progeny, hold that, upon surrender, the secured claim is reduced to zero and the remaining portion of the claim is reclassified or redetermined as unsecured. *See e.g., In re Rimmer*, 143 B.R. 871 (Bankr. W.D.Tenn.1992); *In re Day*, 247 B.R. 898 (Bankr.M.D.Ga.2000).

The cases opposing *Jock*, including the above-mentioned case from the Sixth Circuit *In re Nolan*, hold that a debtor may not surrender collateral and then reclassify any deficiency claim as an unsecured claim. *See, e.g., In re Goos*, 253 B.R. 416 (Bankr.W.D.Mich.2000); *In re Meeks*, 237 B.R. 856 (Bankr.M.D.Fla.1999); *Matter of Coleman*, 231 B.R. 397 (Bankr.S.D.Ga. 1999). These courts rely upon a statutory construction argument that § 1329 does not provide for the reclassification or rede-

termination of claims. "[S]ection 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim." *Nolan* at 532. In so deciding, the *Nolan* court expressly rejected the surrender and reclassification of deficiency claims.

When considering the two approaches this Court believes the better reasoned approach is that set out in *Nolan*. Nothing in § 1329 allows a debtor to revisit the status of a secured claim. Section 1327 provides the provisions of a confirmed plan are binding upon the debtors, and well as others. Any modification proposed under § 1329 must be limited to the three narrow exceptions set out in that statute. Any modification which goes beyond those exceptions would contradict § 1327. *In re Meeks*, 237 B.R. 856, 859–60 (Bankr. M.D.Fla.1999) (Section 1327 binds all parties on everything that *cannot* be modified under § 1329). Applying the analysis of this case, this Court concludes that while § 1329(a) allows for the modification of a confirmed plan by surrender, as a payment on a claim, the statute does not allow the debtor to alter the allowed amount of the secured claim or to reclassify such claim as an unsecured claim.

In his treatise, Judge Lundin disagrees with the "reclassification" characterization. *See generally* KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 264.1 (2000). He believes "[s]ome courts have mischaracterized the effect of modification to surrender collateral or account for repossession as 'reclassifying' the secured claim as an unsecured claim." *Id.* at 264–3. Instead of "reclassifying," Judge Lundin suggests the better way to characterize the re-evaluation of the claim is simply another § 506(a) determination. "There is no reason why

§ 506(a) would not have its normal application at modification of a plan under § 1329." *Id.*

This Court respectfully disagrees with this approach by Judge Lundin. Adopting this approach results in a second § 506(a) cram down. *Nolan* at 532. A secured creditor, after surviving the valuation attack and classification at confirmation, would again be subject to another classification at modification. *In re Dunlap*, 215 B.R. 867, 870 (Bankr.E.D.Ark.1997). Although § 502(j) and Fed. R. Bankr.P. 3008 allow for the reconsideration of the allowance of claims, they do not provide for the reconsideration of the classification (status) of those claims. *In re Britt*, 199 B.R. 1000, 1007 (Bankr.N.D.Ala.1996) (acknowledging allowance of claims and determination of secured status are different determinations). In the absence of specific statutory authority to revisit § 506(a) in § 1329, this Court must find that § 1325(a)(5)(B) and § 1327 prevent such reconsideration. *Massachusetts Housing Finance Agency v. Evora*, 255 B.R. 336, 343 (D.Mass.2000) ("There is nothing in the Bankruptcy Code nor case law to suggest that the [creditor's] secured claim must be, or for that matter can be, redetermined.").

Additionally, for the same reasons why *res judicata* did not apply earlier, it would apply here. The status of the claims was established at confirmation. Any re-visitation of that issue is prohibited. Here, the "cause of action" would be the same. *See supra.* The "cause of action" in the confirmation context was to establish the status and amount of the claims. Riteway was adjudged to be a secured claimholder. Re-applying a § 506(a) determination would simply re-adjudicate these issues.[4]

---

**4.** The Court is aware that it called for another § 506(a) determination when determining the

amount of the "increased payment" as evidenced by the value of the collateral in a

*In re Banks,* 161 B.R. 375, 378 (Bankr.S.D.Miss.1993)(Debtor's confirmed Chapter 13 plan is *res judicata* as to claims determinations.).

Additionally, under Judge Lundin's approach, the debtor could add a claim to the unsecured class. Adding claims is clearly not one of the enumerated permissible modifications under § 1329.An argument could be made that the unsecured claim was already there, and a § 506(a) redetermination simply increases the amount of the unsecured claim already present. This logic is easy to see in a bifurcated claim context. However, what if, as here, the claim was fully secured? There would be no unsecured claim which can be increased. *See In re Rimmer,* 143 B.R. 871, 875 (Bankr.W.D.Tenn.1992)(recognizing problem if creditor is fully secured and debtor attempts, in a post confirmation modification, to add an unsecured claim). There is no unsecured claim to start with in the unsecured class to increase by adding the new unsecured portion. Thus, to redetermine this claim as unsecured would require adding an unsecured claim to the unsecured class, which is not provided in § 1329.

Taking the argument further, one could state there was always an unsecured claim, but it was simply a claim of zero. Therefore, no new claims are added but the zero claim is simply increased by the addition of the new unsecured deficiency claim. In essence, every claim has an implied secured and unsecured portion. If the claim is fully secured, the unsecured claim is zero. If the claim is fully unsecured, the secured claim is zero. The effect of this argument would be to make every creditor both a secured and unsecured creditor. A party may hold an unsecured claim of zero, but they would nonetheless be a unsecured creditor. One need only turn to § 1329 to see why this argument must fail. Section 1329(a) allows for the plan to be modified by the debtor, the trustee, or the *holder of an allowed unsecured claim.* 11 U.S.C. § 1329(a) (emphasis added). If every claimholder is both a secured and unsecured claimholder, then every claimholder could move for modification. The restriction placed in the statute would become superfluous.

The discussion does not end here though. Just because a debtor may not surrender and reclassify or redetermine a claim does not mean the debtor must continue to retain property she obviously wants to surrender. Another alternative is available. The *Nolan* court rejected modification through surrender and reclassification. It did not reject the proposition of modification through surrender and leaving unchanged the classification of the claim. Under this approach, the only "change" is the increase of a "payment" (credit for value of collateral) which would be applied to the amount of the secured claim, which is expressly authorized under § 1329(a)(1).

Leaving the secured status unchanged but only increasing the payment to account for the one-time surrender would seem to be the only permissible post confirmation modification by surrender. This concept is best set out in the case of *In re Meeks,* 237 B.R. 856 (Bankr.M.D.Fla.1999). In *Meeks,* the court stated that § 1327(a) defines the amount of a secured claim as *res judicata,*

foreclosure context. But the difference between re-determining value using a different valuation method and re-determining the status of a claim are apparent. In the context of valuation, the whole methodology is different. The Court is changing from a retention valuation method to a foreclosure valuation method to determine the amount of the increased payment. In re-determining the status of claims post confirmation, the Court would be re-adjudicating the exact same findings that were made at confirmation.

and § 1325(a)(5)(B)(ii) requires full payment of that amount. *Id.* at 858–859. Although § 1329(a) permits a debtor to change the rate at which a claim is paid by surrendering the collateral, modification of payment amount cannot alter the total allowed amount of the secured claim or eliminate the requirement in § 1325(a)(5) that the claim be paid in full. Reclassification of any remaining amount due as an unsecured claim would change the allowed amount of the secured claim. Therefore, the deficiency between the amount of the secured claim and the amount realized by sale of the collateral must continue to be classified as and treated as a secured claim.

A similar result was reached in the case of *Matter of Coleman,* 231 B.R. 397 (Bankr.S.D.Ga.1999). Acknowledging that § 1329(a)(1) permits post confirmation modification to alter the amount of specific periodic payments, the court held that a confirmed plan binds both the debtor and the creditors. Therefore, neither a secured claim nor any portion of it can be reclassified as anything else. "In other words, altering the amount or timing of payments on a secured claim cannot change the fact that, in the end, the full amount of the secured claim established, as of the effective date of the plan, must be paid." *Id.* at 399–400. A modification under either §§ 1329(a)(1) or (a)(3) would not and cannot change the status of the secured claim. The secured claim remains unchanged, "albeit . . . reduced by whatever amount [the creditor] might receive from liquidation of its collateral." *Matter of Abercrombie,* 39 B.R. 178, 180 (Bankr. N.D.Ga.1984). The only thing "changed" is the application of the value of the collateral to the secured debt. *Id. See also In re Smith,* 259 B.R. 323, 327 (Bankr.S.D.Ill. 2001) (Debtor may surrender collateral and receive credit against future plan payments but cannot reclassify the remaining amount as an unsecured claim.).

The result is that even though the debtors may surrender collateral securing a creditor's claim and receive a credit to be applied against the secured claim, the debtors must still pay the full amount of Riteway's secured claim in order to complete their plan as confirmed. The Court is cognizant of the strange result that the debtors will be paying a secured claim secured by nothing. "Nonetheless, the mere fact alone that collateral ceases to be property of the estate after confirmation of a Chapter 13 plan does not retroactively convert an allowed secured claim into an unsecured claim, like a coach into a pumpkin on the midnight stroke of the debtor's decision to abandon or turn over collateral." *In re Smith,* 207 B.R. 26, 31 (Bankr.N.D.Ga.1997). The secured status of Riteway's claim was fixed at confirmation. The claim was allowed as "secured" pursuant to the operation of § 502(a), and its status is not altered by the fact that the debtors propose to surrender the collateral. Riteway, as an allowed secured claimholder, is entitled to be paid the full amount of its claim under the debtors' confirmed plan.

An additional argument on policy grounds should also be considered. There is a certain amount of risk involved in the Chapter 13 confirmation process. The risk is present on both sides of the coin—debtors and creditors. Debtors bear the risk the collateral will reduce in value after confirmation at a rate much faster than anticipated. Creditors bear the risk the debtor will not be able to make plan payments as proposed and confirmed. The current confirmation system attempts to balance these risks between the parties. Debtors are allowed, pursuant to § 506, to pay claims as secured claims only to the extent of the value of the collateral as

determined at confirmation. Creditors are allowed to rely upon the classification and claim determination at confirmation and that the amount determined to be secured will actually be paid by the debtor (as long as the case continues). Kaaran E. Thomas, *Valuation of Assets in Bankruptcy Proceedings: Emerging Issues*, 51 Mont. L.Rev. 126 (1990). Allowing the debtor to surrender the collateral and either not pay a deficiency claim or to pay the deficiency as an unsecured claim upsets this delicate balance between the parties. The risk of extreme depreciation post confirmation would shift to the creditor without a corresponding benefit. *Nolan* at 534. A creditor would generally have no confidence that the amount allowed as secured at confirmation would be paid by the debtors. Such an imbalance of equities and shifting of risks is unacceptable to this Court.

This Court is also aware that the debtors may circumvent this result by simply dismissing their case and refiling a new Chapter 13 case. In fact, several courts have allowed these type of modifications simply because of this possibility. *See In re Frost*, 123 B.R. 254, 259 (S.D.Ohio 1990). If the debtors chose to dismiss and refile in order to reclassify a secured claim as an unsecured claim at the second confirmation hearing, they face challenges based upon good faith and potential relief from the automatic stay. Additionally, the potential for "serial filer" status is present. *See Matter of Coleman*, 231 B.R. 397, 401 (Bankr.S.D.Ga.1999); *In re Goos*, 253 B.R. 416 (Bankr.W.D.Mich.2000).

To conclude, this Court finds the debtors' motion to modify as currently advocated is an impermissible modification that cannot be approved. Should the debtors chose modification through surrender, the creditor will be allowed, within 60 days of the surrender of the vehicle, to file an amended proof of claim reflecting the cor-

rect amount owed taking into account the amount recovered from the foreclosure or liquidation of the collateral. This deficiency claim will remain secured. The debtors will still retain their rights to contest the liquidation or foreclosure of the vehicle that they currently possess under state law.

A separate order will be entered in accordance with this Memorandum Opinion.

## ORDER ON MOTION TO MODIFY

In accordance with the Memorandum Opinion entered this same day, it is hereby ORDERED the debtors' Motion to Modify is disapproved.