In re Philip WHITE and Patricia White, Debtors.

**Bankruptcy No. 89–12820 K.**

United States Bankruptcy Court, W.D. New York.

June 27, 1994.

---

Susan M. Hassinger, Buffalo, NY, for movant RB–3 Associates.

Joseph W. Rotella, UAW–GM Legal Services Plan, Cheektowaga, NY, for debtors.

---

### DECISION AND ORDER SUSTAINING OBJECTION TO SECURED CLAIMS

MICHAEL J. KAPLAN, Chief Judge.

#### Introduction

There is authority from other Districts to the effect that if a Chapter 13 debtor agrees to pay the value of collateral (or, because of 11 U.S.C. § 1322(b)(2), the full amount of a mortgage claim) as a secured claim and then later endeavors to surrender the collateral after it has declined in value, and endeavors to re-classify the debt as unsecured by means of a plan modification under 11 U.S.C. § 1329, the binding effects of 11 U.S.C. § 1327 condemn the effort to failure. Some holdings to that effect regrettably contained language that extended beyond the facts then at Bar, and have spawned this Contested Matter.

For today the table is turned. The lender in the case at Bar seeks to hold the Debtors to their promise to pay the lender's secured claims in full despite the fact that the lender has repossessed the collateral and sold it at a value somewhat less than the total of allowed secured claims as fixed by the Plan and Order of Confirmation, whereby the Debtors had agreed to pay the secured claims in full.

Were it not for the cases whose language extended beyond their holdings, it would likely be beyond doubt that a creditor that elects to repossess the collateral to sell it has elected to rely upon the collateral with regard to the "secured claim" and may enforce the deficiency as an unsecured claim only. But those cases are cited today in an effort to persuade the Court that when the Debtors in this case agreed in their Chapter 13 plan to pay the lender's secured claims in full, they were in essence "guaranteeing" that value to the lender despite the fact that three years later and still laboring under the Chapter 13 plan, unable to continue to make the payments called for on the loan, the Debtors suffered the repossession of the manufactured home by the lender and the lender's sale thereof (more than a year after that) at a price which left $18,000 remaining unpaid on the purchase obligation,[1] of which nearly

---

1. The value of the home at the time of confirmation was set at $35,000, and the sale price after repossession was in fact $35,000; but with accrued interest, clean-up expenses, legal expenses, and other expenses, the total obligations to the lender secured by the mobile home were allegedly $18,000 higher than the $35,000 indebtedness which the Debtors believed existed at the time of

$1700 is in secured claims which were to be paid in full under the plan. The question now before the Court is whether that $1700 must be paid in full as a secured claim, or may be paid only 5% along with other unsecured claims now that the collateral is gone.

For some reason not known to the Court, the lender did not obtain relief from the automatic stay before dispossessing the Debtors and selling their manufactured home. For some reason also not known to the Court, the Debtors have not protested this possible violation of the automatic stay. But for the payment of unsecured claims, the Debtors claim to have completed their plan, and they require resolution of the unsecured claims so that they may complete their plan and obtain their Chapter 13 discharge. (Indeed, they believe that they have overpaid the lender, and that they are entitled to a refund.)

### Discussion

Although (as explained below) some courts consider the present question to be one of construction of that provision of the Bankruptcy Code that governs "reconsideration of claims" (11 U.S.C. § 502(j)), and others consider it to be a matter for construction of provisions governing post-confirmation modification of plans (11 U.S.C. § 1329), the present Court considers today's issue to be a matter of common sense, common law, and custom and practice that form the foundation of motions under Section 362(d) seeking orders for relief from automatic stay, and of the orders granting such motions. (Although the motion was not made in this case, and no order was granted, the Court will treat this matter as if these customary requirements had been observed.)

When debtors utilize 11 U.S.C. § 1325(a)(5)(B) they are electing to retain their home (or car, or boat, or other collateral) and to pay the present value of the full fair value of the collateral to the creditor

over the life of the plan, also acknowledging that the lender is to retain the lien on the property. The debtor could alternatively surrender the collateral to the secured creditor in full satisfaction of the creditor's "secured" claim, relegating the creditor only to "unsecured" status as to any deficiency (11 U.S.C. § 1325(a)(5)(C)). Because 11 U.S.C. § 1327 states that the provisions of the confirmed plan and the Order of Confirmation "bind the debtor" (as well as the creditor), the creditor here objects to the Debtors' effort to "switch" from (a)(5)(B) treatment of the creditor to (a)(5)(C) treatment years into the Plan, after the repossession and resale of the manufactured home.

What is omitted in the creditor's analysis at bar, and overlooked in the Debtors' analysis,[2] is the fact that when a 11 U.S.C. § 362(d) motion is properly made and granted, it is usually explicitly recognized (and always implicitly recognized) that the grant of the motion relegates the parties to their State Law rights. Plans and Orders confirming them do not extinguish all pre-existing contractual rights and remedies between the Debtor and a secured creditor.

When this Court grants motions to lift stay to permit repossession or foreclosure it does not direct the Debtor to turn over the property to the lender, and does not supplant State Law protections for the Debtor regarding notice, redemption, or the like. Contract terms that govern the relationship between the Debtor and the creditor, that might enure to the benefit of either, are not abrogated. It is at least implicit, if not explicit, in orders lifting the stay, that (1) the Debtor has lost the anticipated benefit of retention of the collateral—which was the "quid pro quo" for the Debtors' promise to pay 100 cents on the dollar on the full fair market value of the collateral (regardless of how much lower than that value the creditor might have received had the Debtor simply surrendered it

---

confirmation four years earlier. Although the creditor now agrees that the $35,000 proceeds must be applied first to the claims filed as secured (and I would so rule, in any event), those secured claims totalled $36,697.84 (as discussed in a separate decision unrelated to today's holding).

**2.** The attorney currently representing the Debtor is not the attorney who represented the Debtor at the time of confirmation or at the time of repossession and resale of the Debtors' manufactured home.

to the creditor at the time of confirmation)—that (2) the intentions of the Plan cannot be realized, and that (3) the Plan or the Order confirming it, must be adjusted accordingly.

When a debtor elects to retain the property and therefore provide for the lienor to "retain its lien," all incidents of the lien and the relationship between the parties (e.g. duty to maintain insurance) remain intact. It is only the right to enforce the lien that is impaired, as well as the payment conditions that trigger the right of enforcement. A good faith debtor does not thereby become a guarantor of the full amount of the debt or of the value set at the time of confirmation (which value is largely dependent on such measures as NADA book value). At the time of repossession, the value of the collateral might be higher or lower. If the creditor had succeeded in obtaining higher than that estimated value upon repossession and resale, the Debtor could not claim entitlement to that excess unless the creditor would be paid more than in full on the total outstanding balance secured by that collateral. The lien that the secured creditor retains by virtue of 11 U.S.C. § 1325(a)(5)(B) is precisely what a lien is expected to be at common law. It is a lien on the property, nothing more and nothing less, which lien is defined by the contract terms and by state or federal non-bankruptcy law.

The Debtors' promise to pay 100 cents on the dollar on the creditor's claim does not supplant these rights; it merely recognizes them. Thus, it is a promise that is conditioned on the Debtors' ability to retain the collateral. When an order of this Court denies the Debtors such retention, or acknowledges the Debtors' inability to retain the collateral, it is necessarily implicit and understood that the creditor's claims will be "deemed amended" accordingly. (Equally supportable is the notion that such consequences of Orders Lifting Stay are implicitly recognized in our customary Plans and Con-

firmation Orders themselves. There is no need to determine whether these basic understandings lay in between the lines of the Plans and Confirmation Orders, or between the lines of Orders Lifting Stay.[3])

Quite simply, there is probably no circumstance under which this Court would grant any order to lift stay to take away the good-faith Debtors' home in a Chapter 13 proceeding, but also order that the creditor collect 100 cents on the dollar on any unsecured deficiency claim. (If the Debtor will be required to pay the full debt in any event, the Court would at the least let the Debtor control the sale of the collateral.)

The concern of some courts with the fact that plan modifications under section 1329 may only address the amounts to be paid, and may not be used to reclassify a secured claim as an unsecured claim, is misplaced. To the extent, if any, that today's holding must be reconciled with § 1329 it may simply be said that after repossession and sale the secured claim is simply being "valued to 0" and the amounts to be paid on the secured claims are being reduced to 0, while the unsecured claim is being modified upwardly if necessary.[4]

Concerns regarding the proper interpretation of 11 U.S.C. § 502(j) are similarly misplaced. However sparsely-worded and routine our Orders lifting stay might sometimes be, they are not vacuous. They are laden with sensible and necessary implications, as above.

With one exception, the cases cited by the lender are not to the contrary. *In re Stone*, 91 B.R. 423 (Bankr.N.D.Ohio 1988); *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989); *In re Sharpe*, 122 B.R. 708 (E.D.Tenn.1991); and *In re Holt*, 136 B.R. 260 (Bankr.Idaho 1992) all involved efforts by the Debtor to surrender the collateral to the lender, whether the lender wanted it or not. They focused

---

**3.** The Plan, as usual, simply says "Holders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows: 100 percent of their claims as allowed by the court." The Confirmation Order is silent as to any mortgage obligations other than arrears, since the payments were to be made "outside"

the Plan. Surely, this standard cryptic, but well-understood treatment of secured claims does not fail to carry its own common-sense implications.

**4.** See *In re Frost,* 96 B.R. 804 (Bankr.S.D.Ohio 1989).

on the interplay between § 1327 and § 1329 and they split on the issue of the Debtor's right to modify in such instances. Here, repossession was the creditor's election.

The case of *In re Anderson,* 153 B.R. 527 (Bankr.M.D.Tenn.1993), focused on that difference—an election by the lender to repossess as opposed to an effort by the Debtor to force a change. That case upheld the Debtor's effort to modify the Plan. (It may be that some 11 U.S.C. § 554 Orders of Abandonment, and the like, carry implications like those of lift-stay orders, or that such implications even as to abandonments may be found in the Plan and Confirmation Order itself (see footnote 3).) The present Court leaves the question of whether the creditor's election is or is not decisive for another day.

The court *In re Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga.1984) seems to be at odds with today's holding, and the present Court respectfully believes that that Court has failed to give appropriate weight to the creditor's decision to seek repossession and to the court's own decision to lift the § 362(a) stay.

### Conclusion

■ This Court holds that once the § 362(d) Order lifting stay was granted, any and all deficiencies as to the claims secured by that collateral were (after sale) rendered unsecured, and the lender was obliged to advise the Chapter 13 debtors of the results of the sale so that the creditor's claims and the Plan payments could be adjusted accordingly. Any Chapter 13 payments received by the lender on the "secured" claims after the date of sale are recoverable by the Chapter 13 trustee for the benefit of all creditors (by hastening payment) and the debtors.[5]

The remaining issues in this case will be addressed in a separate decision.

SO ORDERED.

---

**5.** The lender now argues that the Debtors have stipulated to an $18,001.32 "secured" balance in the "stipulated facts" upon which the present motion was decided. The essence of the Debtors' present motion is to deny the existence of any remaining "secured claim." The language of the stipulation in question most certainly does not bespeak a present intention to acknowledge an $18,000 secured obligation. (Stipulations are to be interpreted in accord with the intentions of the parties.)