In re Joel R. WALLER, Debtor.

Bankruptcy No. 96–33014–B.

United States Bankruptcy Court,
W.D. Tennessee.

Sept. 30, 1998.

Ben G. Sissman, Memphis, TN, for debtor.

Mark D. Johnston, Dyersburg, TN, for creditor.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEBTOR'S MOTION TO MODIFY CONFIRMED CHAPTER 13 CASE

WILLIAM H. BROWN, Bankruptcy Judge.

The secured creditor moved for relief from the automatic stay in order to repossess the collateral securing a debt, and the Court entered an order granting the motion. Thereafter, the creditor repossessed the car, which had declined in value below the amount of the debt and the amount that had been allowed as a secured claim. The debtor, who was in arrears, moved to modify his confirmed Chapter 13 plan pursuant to 11 U.S.C. § 1329(a) in order to reclassify the creditor as an unsecured claimholder.

The issues presented are of both law and fact as to whether a debtor may reclassify the deficiency from the recovery of collateral of diminished value as an unsecured claim and, more specifically, whether a debtor may so reclassify payments due before the creditor regained actual possession of the collateral. The creditor objected to the debtor's "Motion to Modify Confirmed Chapter 13 Case," thus presenting a core proceeding to the Court. 28 U.S.C. § 157(b)(2)(L) and (O). The following contains findings of fact and

conclusions of law pursuant to Fed. R.Bankr.P. 7052.

## SUMMARY OF FACTS

Mr. Waller is a debtor in a Chapter 13 plan which was confirmed on November 26, 1996. The confirmed plan, as subsequently modified, provided that the creditor, First Citizens National Bank, would be treated as a secured creditor for the debt secured by a 1992 Pontiac Firebird. A consent order entered on May 29, 1997, denied First Citizens' first motion to lift the automatic stay and gave it two secured claims: one for $3,858.00 and the other for $9,339.81, the latter being this car loan. Additionally, the plan gave First Citizens an unsecured claim, and monthly payments were established by consent orders modifying the confirmed Chapter 13 plan. When Mr. Waller became delinquent in his plan payments to First Citizens, the Court on January 7, 1998 lifted the automatic stay against the co-obligor and ordered Mr. Waller to pay a $3,000 lump sum to First Citizens for application to the first lien on the auto. After making the $3,000 payment as ordered, Mr. Waller defaulted again on his payments due First Citizens, and on June 17, 1998 the Court granted First Citizens' "Motion to Lift the Automatic Stay" to enable First Citizens to repossess the 1992 Pontiac Firebird. The June 17 Order allowed First Citizens to file an amended claim for any post-sale deficiency. First Citizens' sale of the auto resulted in a deficiency, and Mr. Waller on July 30, 1998 moved to modify the confirmed Chapter 13 plan again, this time to reclassify First Citizens as an unsecured creditor. First Citizens objected to the proposed post-confirmation modification altering its status as a secured creditor and sought to have the deficiency bifurcated into secured and unsecured claims pursuant to *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989).

## DISCUSSION AND CONCLUSIONS OF LAW

■ When a secured creditor regains possession of collateral that has declined in value below the amount of a debt, under the holding of *In re Jock* the Chapter 13 debtor, in appropriate cases, may reclassify the defi-ciency as an unsecured claim. *Jock*, 95 B.R. 75 (holding that 11 U.S.C. § 1329(a) permits post-confirmation modification of a single secured creditor's claim). *Jock* has been followed by this Court. *In re Rimmer*, 143 B.R. 871 (Bankr.W.D.Tenn.1992). What *Jock* and *Rimmer* do not address is whether a debtor must pay the amounts that accrued before the creditor's repossession as secured or unsecured claims. Mr. Waller did not voluntarily surrender the vehicle, as was done in *Jock* and *Rimmer*. Because Mr. Waller was delinquent on his payments before the Court granted First Citizens' "Motion For Relief from Automatic Stay," the Court must determine in this case whether a debtor may reclassify secured payments due before the creditor obtained an order to regain actual possession of the collateral. In other words, the Court must determine at what time a debtor may reclassify a secured claim to unsecured status when the creditor is forced to file a motion for relief from the automatic stay in order to repossess collateral that has diminished in value subsequent to the confirmation order or orders modifying the confirmed plan.

■ This Court in *Rimmer* addressed this timing issue when a Chapter 13 debtor sought to surrender a car that had depreciated in value below the amount of the allowed secured claim. As with Mr. Waller, the debtor in *Rimmer* was in arrears when the car was transferred to the creditor, and the debtor moved to modify the confirmed plan. Though the debtor's motion failed to notify creditors of the debtor's attempted post-confirmation modification and thus prevented the Court from fully adjudicating the matter, the Court drew conclusions and followed *Jock* in holding that a Chapter 13 debtor may be able to surrender depreciated collateral and then modify a confirmed plan to reclassify the resulting deficiency as an unsecured claim. The Court in *Rimmer* addressed the debtor's pre-surrender arrearages: "[I]f the debtor has not paid the secured creditor in compliance with the confirmed plan, any amount not paid through the date of surrender is still a part of the secured claim which must be paid." *Rimmer*, 143 B.R. at 876. According to *Rimmer*, a creditor " 'is entitled

by § 1327(a) to the binding effect of the original confirmation order through the date the debtor surrendered the car.'" *Id.* (quoting *In re Jock*, 95 B.R. at 78). This Court established its rule for timing the bifurcation: "Just as the debtor could not surrender collateral in a confirmed plan absent consent of the secured creditor or the approval by the court of the debtor's plan modification, the date of surrender of the collateral can not be forced upon the secured creditor without its consent or a judicial determination." *Id.* Under *Rimmer*, First Citizens' status as a secured creditor can be altered only upon a judicial determination, absent its consent. In this case, the Court entered an "Order Granting [First Citizens'] Motion For Relief from Automatic Stay" on June 17, 1998. For the time before entry of that order, First Citizens remains a secured creditor, and any plan payments on the bank's secured claim that accrued before June 17, 1998 must be paid as a secured claim. Upon entry of that June 17 Order, Mr. Waller could classify any remaining deficiency on the bank's claim as an unsecured claim. The Court will, therefore, grant in part Mr. Waller's motion to modify his confirmed plan in order to allow him to reclassify the deficiency accruing after June 17 as an unsecured claim, but the Court will deny the motion's request to reclassify any of the secured claim's payments which were due before June 17, 1998.

■ Mr. Waller questions the applicability of *In re Jock* to his case because of a difference between the parties initiating procedures for repossession. Whereas the debtor in *Jock* moved to surrender the collateral, the creditor in Mr. Waller's case moved for relief from the automatic stay. Mr. Waller proposes that the creditor's initiation of repossession precludes it from obtaining any deficiency as a secured payment. *In re Anderson*, 153 B.R. 527 (Bankr.M.D.Tenn. 1993), addressed this distinction and applied the rule of *Jock:* The repossessing bank was also subject to modification. *Anderson* establishes that where collateral has depreciated below the amount of a secured claim, the identity of the party seeking transfer of the collateral to the creditor does not affect the debtor's ability to reclassify the deficiency as an unsecured claim after the creditor has obtained possession of the collateral. If a Chapter 13 debtor is concerned that the creditor will delay in moving for relief from the automatic stay, thus prolonging the secured payments, the debtor may cure that concern by a voluntary surrender of the collateral. The creditor, such as First Citizens National Bank, should not be penalized because it exercised its remedy for relief from the stay; after all, the bank could not have recovered its collateral absent the debtor's consent or the court's order.

■ In its response pleading, the Bank seeks an award of its attorney fees. There is no authority given to the court for an award of fees against the debtor when the creditor is no longer secured. Compare 11 U.S.C. § 506(b). The Bank's request for fees will be denied.

Based on the forgoing findings and conclusions, IT IS ORDERED that Mr. Waller is allowed to modify his confirmed plan to reclassify the deficiency of First Citizens' claim as an unsecured claim but that Mr. Waller must pay his arrearage that was due First Citizens before the June 17, 1998 Order as secured payments. The Bank's request for attorney fees is DENIED.