**In re Matthew ADKINS, Debtor.**

**In re Raelwis Simon, Debtor.**

**Nos. 01–55970–R, 01–53750–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 18, 2002.

Daniela Dimovski, Shermeta, Chimko & Adams, P.C., Robert L. Dzialo, Rochester Hills, MI, for creditor.

Terri Weik, Weik and Associates, P.C., Warren, MI, for debtor.

*Opinion Granting Motions to
Lift Automatic Stay*

STEVEN W. RHODES, Chief Judge.

These cases were initially before the Court on March 21, 2002, on motions to lift

the automatic stay filed in each case by DaimlerChrysler (DC). The trustee objected to language in the proposed orders which classified DC's deficiency claim as secured. The Court subsequently granted DC's motions. This opinion supplements the Court's decision given in open court on April 11, 2002.

## I.

In the *Adkins* case, the debtor filed for chapter 13 relief on August 17, 2001. At that time, the debtor owed DC $5,963.81 for the purchase of a Plymouth Neon. DC had a fully perfected security interest in the vehicle. The debtor's plan was confirmed on October 13, 2001. The vehicle was valued at $5,842 for purposes of confirmation. The debtor was required to make monthly payments to DC in the amount of $136. The debtor defaulted, prompting DC's motion to lift the stay. The approximate market value of the vehicle at the time the motion was filed was $4,892.50.

In the *Simon* case, the debtor filed for chapter 13 relief on July 17, 2001. At that time the debtor owed DC $9,382.98 for the purchase of a Dodge Stratus. DC had a fully perfected security interest in the vehicle. The debtor's plan was confirmed on October 13, 2001. The vehicle was valued at $7,000 for purposes of confirmation. The debtor was required to make monthly payments to DC in the amount of $160. The debtor failed to make the required plan payments, prompting DC's motion to lift the stay. The approximate market value of the vehicle at the time the motion was filed was $5,367.50.

In its proposed orders attached to both motions, DC included a provision that if the sale of the vehicle resulted in a deficiency, DC would be paid the deficiency balance as a secured creditor, as provided in the confirmed plan. The trustee object-ed, arguing that there is no basis for the deficiency balance to be paid as a secured claim to the detriment of unsecured creditors and that if the stay is lifted, DC should be relegated to its state court rights and remedies.

## II.

Both the trustee and DC cite *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000). In *Nolan*, the court of appeals held that a chapter 13 debtor cannot modify a confirmed plan by surrendering collateral to a secured creditor and reclassifying the deficiency balance after the sale as an unsecured claim. The debtor owed $12,291.45 to Chrysler for the purchase of a vehicle. The vehicle was valued at $8,200 for purposes of confirmation. Approximately one year after the plan was confirmed, the debtor sought to modify her plan by surrendering the vehicle to Chrysler and having the deficiency balance reclassified as an unsecured claim. Chrysler objected, arguing that such a modification was prohibited under § 1329. The bankruptcy court granted the debtor's motion. However, the district court reversed, concluding that § 1329(a) did not permit the debtor to modify the plan as proposed.

On appeal, the Sixth Circuit affirmed the district court citing five grounds. "First, section 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim." *Id.* at 532. The court explained that § 1329(a)(1) only permitted a debtor to alter the amount or timing of specific payments, and that permitting a debtor to reduce a secured claim would add a claim to the class of unsecured creditors, which is not permitted.

"Second, the proposed modification would violate section 1325(a)(5)(B), which mandates that a secured claim is fixed in

amount and status and must be paid in full once it has been allowed." *Id.* at 533 (footnote omitted). The court continued:

Debtors seeking modification are attempting to bifurcate a claim that has already been classified as fully secured into a secured claim as measured by the collateral's depreciated value and an unsecured claim as measured by any unpaid deficiency. This would negate the requirement of section 1325(a)(5)(B)(ii) that a plan is not to be confirmed unless the property to be distributed on account of a claim is not less than the allowed amount of the claim.

*Id.*

"Third, proposed modification would contravene section 1327(a), because a contrary interpretation postulates an unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset." *Id.* at 533.

"Fourth, only the debtor, the trustee, and holders of unsecured claims are permitted to bring a motion to modify a plan pursuant to section 1329(a)." *Id.* at 534. The court noted that it would be unfair to permit the debtor to reclassify a claim when the collateral depreciated, while the secured creditor could not seek to reclassify its claim in the event that collateral appreciated.

Finally, the court stated that § 1329 does not provide that a plan may be modified to increase or reduce the amount of *claims,* but only the amount of *payment* on claims. *Id.* at 534. The court found this significant given that the terms "claim" and "payment" have different meanings.

The court further stated:

Although "payment" is not defined in the Code, usage of the term is ... con-

sistent throughout the Code and reflects a meaning different from the term "claim." There is no reason to suppose that Congress intended in section 1329 to disregard the ordinary common law meaning of the term "payment," which is "the delivery of money or other value by a debtor to a creditor." BLACK'S LAW DICTIONARY 1129 (6th ed.1990). Furthermore, if the term "payments" in section 1329(a) referred to the secured claim itself rather than to individual payments, the separate use of "claims" in section 1329(a)(3) would be superfluous. Read with the benefit of proper term definitions, section 1329 clearly indicates that modifications after plan confirmation cannot alter a claim (a right to a remedy or payment of a certain total amount), but can extend or compress payments and reduce or increase the amount of the delivery of value planned as an eventual satisfaction for the creditor's claim.

*Id.* at 535 (footnotes omitted).

The court therefore concluded that "[s]ection 1329 only permits modification of the *amount* and *timing* of *payments,* not the total *amount* of the *claim.*" *Id.*

DC also relies on *In re Coleman,* 231 B.R. 397 (Bankr.S.D.Ga.1999) and *In re Abercrombie,* 39 B.R. 178 (Bankr.N.D.Ga. 1984). In *Coleman,* the debtor proposed to surrender a vehicle and reclassify the deficiency claim as unsecured. The court refused to permit such a reclassification on the grounds that it violates § 1329(a). *Coleman* involved facts similar to those in *Nolan* and was cited extensively by the *Nolan* court in its decision.

In *Abercrombie,* GMAC held a $10,090.27 claim fully secured by a vehicle. The debtor defaulted on his plan payments and GMAC sought relief from the stay. After relief was granted, the debtor sought to change the status of GMAC's secured

claim to render the deficiency balance unsecured. The court refused to permit the proposed modification, stating:

> The interrelationship of §§ 1325(a)(5) and 1327 of the Code compels this court to deny the debtor's objection to the secured claim and the proposed modification of the plan. Under § 1325(a)(5), the debtor's proposed Chapter 13 plan must either provide that the secured creditor retain its lien and be paid the value of its claim over the life of the plan or, in the alternative, surrender the secured property. In this case, the debtor could have allowed GMAC to retain the security and surrender his interest in the vehicle to GMAC at or prior to confirmation of the plan, thereby rendering any deficiency balance due after disposition of the collateral an unsecured claim. Instead, in the instant circumstances, the debtor elected to propose as a part of his Chapter 13 plan that he regain possession of the vehicle from GMAC, that, pursuant to § 1325(a)(5), GMAC retain its lien, and that GMAC be paid its value in the form of monthly payments over the life of the Chapter 13 plan. The claim was allowed as fully secured and the plan confirmed as proposed by debtor. The debtor could have obtained the result sought now in this proceeding had the debtor allowed GMAC to retain the vehicle prior to confirmation and thereby reduce the claim of GMAC. Under § 1327, the debtor and creditor are bound by the provisions of the confirmed Chapter 13 plan[.]

*Id.* at 179.

The court also relied on the provisions of § 1329, stating:

> Section 1329 permits the debtor under certain circumstances to modify the plan after confirmation as the debtor is attempting to do in this case via the instant proceeding. Section 1329, however, does not provide the debtor with a means to reclassify a previously allowed secured claim as unsecured after the plan has been confirmed. To do so would be to circumvent the principles of *res judicata* which bind the debtor and creditor noted above. Here, GMAC's claim filed in the sum of $10,090.27 was allowed at confirmation as fully secured by collateral having the value of the claim at the effective date of the plan. That claim once allowed and the plan confirmed remains as a fully secured claim, albeit it will be reduced by whatever amount GMAC might receive from liquidation of its collateral.

*Id.* at 179–80 (citation omitted).

On the other hand, the trustee relies on *In re White,* 169 B.R. 526 (Bankr. W.D.N.Y.1994), and *In re Waller,* 224 B.R. 876 (Bankr.W.D.Tenn.1998). In *White,* the creditor repossessed the vehicle, sold it for less than the value of its secured claim and sought to retain the full amount of its secured claim. The court began its analysis by noting:

> Although ... some courts consider the present question to be one of construction of that provision of the Bankruptcy Code that governs "reconsideration of claims" (11 U.S.C. § 502(j)), and others consider it to be a matter for construction of provisions governing postconfirmation modification of plans (11 U.S.C. § 1329), the present Court considers today's issue to be a matter of common sense, common law, and custom and practice that form the foundation of motions under Section 362(d) seeking orders for relief from automatic stay, and of the orders granting such motions.

*Id.* at 529.

The court stated that when a motion to lift the stay is granted, the parties are relegated to their state law rights and remedies. Moreover, "Plans and Orders

confirming them do not extinguish all pre-existing contractual rights and remedies between the Debtor and a secured creditor." *Id.* The court continued:

> When this Court grants motions to lift stay to permit repossession or foreclosure it does not direct the Debtor to turn over the property to the lender, and does not supplant State Law protections for the Debtor regarding notice, redemption, or the like. Contract terms that govern the relationship between the Debtor and the creditor, that might enure to the benefit of either, are not abrogated. It is at least implicit, if not explicit, in orders lifting the stay, that (1) the Debtor has lost the anticipated benefit of retention of the collateral—which was the "quid pro quo" for the Debtors' promise to pay 100 cents on the dollar on the full fair market value of the collateral (regardless of how much lower than that value the creditor might have received had the Debtor simply surrendered it to the creditor at the time of confirmation)—that (2) the intentions of the Plan cannot be realized, and that (3) the Plan or the Order confirming it, must be adjusted accordingly.

*Id.* at 529–30.

The court further recognized that a debtor's promise to pay 100% of a secured claim is conditioned on the debtor's ability to retain the collateral. "When an order of this Court denies the Debtors such retention, or acknowledges the Debtors' inability to retain the collateral, it is necessarily implicit and understood that the creditor's claims will be 'deemed amended' accordingly." *Id.* at 530. In response to any perceived conflict with § 1329, the court stated:

> The concern of some courts with the fact that plan modifications under section 1329 may only address the amounts to be paid, and may not be used to reclassi-

fy a secured claim as an unsecured claim, is misplaced. To the extent, if any, that today's holding must be reconciled with § 1329 it may simply be said that after repossession and sale the secured claim is simply being "valued to 0" and the amounts to be paid on the secured claims are being reduced to 0, while the unsecured claim is being modified upwardly if necessary.

*Id.* (footnote omitted).

In *Waller,* the court held that when a creditor regains possession of its collateral, the debtor may reclassify the deficiency as an unsecured claim.

### III.

Initially, the Court notes that both cases on which the trustee relies, *White* and *Waller,* were decided before *Nolan.* In addition, the cases on which *Waller* relied, *In re Jock,* 95 B.R. 75 (Bankr.M.D.Tenn. 1989), and *In re Rimmer,* 143 B.R. 871 (Bankr.W.D.Tenn.1992), were specifically rejected by the Sixth Circuit in *Nolan.*

The trustee attempts to distinguish *Nolan* on the basis that while in *Nolan,* the debtor voluntarily surrendered the collateral and then attempted to reclassify the secured claim, here the creditor is seeking relief from the automatic stay to repossess the collateral. The Court must conclude that under *Nolan,* this is a distinction without a difference. Both debtors here have defaulted. Under the trustee's rationale, the only way for DC to retain its fully secured claims is to do nothing while the value of the collateral continues to decrease, or to wait for the debtors to voluntarily surrender their vehicles. Nothing in the Bankruptcy Code imposes such burdens on a secured creditor.

In addition, the five part reasoning of *Nolan* is equally applicable to the circumstances before the Court. As *Nolan* ob-

served, nothing in § 1329 permits the debtor to modify a secured claim and § 1325(a)(5)(B) requires that a plan propose to pay secured claims in full. Moreover, as in *Nolan*, it would be unfair to allow the debtor to reduce the secured creditor's claim when the secured creditor is not permitted to take advantage of any possible postpetition appreciation.

Accordingly, the Court concludes that the rationale of *Nolan* is applicable and DC's deficiency claims in both cases are secured.