307 B.R. 880 (2002)
In re Matthew ADKINS, Debtor.
David Wm. Ruskin, Trustee, Appellant,
v.
Daimler Chrysler Services North America, L.L.C. (Creditor), Appellee.
No. 02-CV-71578-DT. Bankruptcy No. 01-55970-SWR.
United States District Court, E.D. Michigan, Southern Division.
December 18, 2002.
*881 Teresa M. Weik, Thav, Gross, Bingham Farms, MI, for debtor.
Leslie J. Stein, Seyburn, Kahn, Stuart A. Gold, Gold & Lange, Michelle M. Stephenson, Southfield, MI, for Appellant.
Daniela Dimovski, Darryl J. Chimko, Elizabeth M. Abood, Robert L. Dzialo, Shermeta, Chimko, Rochester Hills, MI, for Appellee.
ORDER AFFIRMING THE BANKRUPTCY COURT'S APRIL 11, 2002 BENCH OPINION AND SUBSEQUENT JUNE 18, 2002 WRITTEN SUPPLEMENT
BORMAN, District Judge.
This appeal from the Bankruptcy Court challenges that court's decision and order *882 which, in granting creditor Appellee Daimler Chrysler's motion to lift the automatic stay to permit the sale of an automobile, ruled that any deficiency in the sum received from the sale, from the amount owed by the debtor under the secured portion of the Chapter 13 confirmation plan, would be treated as a secured claim. The Court heard oral argument on September 6, 2002. On September 10, 2002, the Court dismissed, without prejudice, the appeal as not ripe for adjudication because the automobile in dispute had yet to be repossessed by the Appellee. On October 8, 2002, the Court denied Appellant's motion for reconsideration. The Court clarified, however, that if Appellee/Creditor Daimler Chrysler repossessed and sold the vehicle and subsequently asserted secured creditor status as to all/part of the deficiency balance, the appeal would be reinstated nunc pro tunc. The automobile was, in fact, repossessed and sold, and the appeal was reinstated, nunc pro tunc, by order dated November 15, 2002. The Court, having received supplemental briefing, will now render an opinion. Having considered the entire record, and for the reasons that follow, the Court AFFIRMS the Bankruptcy Court.

FACTS
A. General Background
The facts in this case are essentially uncontested. The debtor filed for relief pursuant to Chapter 13 of the U.S. Bankruptcy Code on August 17, 2001. On September 13, 2001, Appellee/Creditor, Daimler Chrysler Services North America ("DC") filed a proof of claim in the amount of $5,963.81 at 18,75% interest, to reflect debtor's indebtedness with respect to a 1997 Plymouth Neon. On September 20, 2001, DC filed objections to the proposed value and interest rate assigned by debtor  the original plan classified the secured portion of the claim at $5,525. The original plan also called for payment to the class of unsecured creditors  "All general unsecured claims shall be paid 33% of such amounts . . ."
Objections to the plan were resolved on November 8, 2001. The order confirming the plan, entered on the same date, stated in part: "Chrysler Financial Company shall be treated as a Class Five  Other Secured Claim as to the 1997 Plymouth Neon in the amount of $5,842.00, with payments of $136.00 per month for 59 months and interest at 14% per annum. Any remaining deficiency balance shall be treated as a Class Eight General Unsecured Claim." The confirmed plan also stated: "Class Eight Unsecured Creditors shall receive no less than 100% of all filed claims."
The debtor, post confirmation, defaulted on the payments due DC with respect to the Neon. As a result, DC, on February 21, 2002, filed a motion with the bankruptcy court seeking relief from the automatic stay. The motion stated that the approximate market value of the automobile was $4,892.50. The motion also requested that the creditor be paid on any "deficiency balance [resulting from the sale] as a secured creditor as set forth in the original confirmed Plan after filing an amended Proof of Claim, pursuant to Chrysler Financial v. Nolan, 232 F.3d 528 (6th Cir.2000)." Specifically, DC requested that the difference between the confirmed plan's secured amount of $5,842 (less any payments made), and the amount recouped from the sale of the repossessed Neon, be treated as a secured claim.
The Appellant/Trustee objected to DC's motion for relief from the automatic stay, arguing that there was no basis for treating a potential deficiency balance subsequent to the sale as a secured claim. The Bankruptcy Judge heard oral argument on March 21, 2002, ultimately overruling the *883 Trustee's objections, on the record, on April 11, 2002. The Bankruptcy Judge subsequently issued an order dated June 18, 2002, supplementing the court's April 11, 2002 decision. In re Adkins, 281 B.R. 905 (Bankr.E.D.Mich.2002).
B. The Court's September 10, 2002 Dismissal
On September 10, 2002, the Court dismissed without prejudice Appellant's appeal, holding that because the vehicle at issue had yet to be repossessed, the appeal was not ripe for consideration. Specifically, the Court concluded that the determination whether a potential post-sale deficiency balance should be categorized as a secured or unsecured claim was not ripe  a decision by the Court would have been an advisory opinion based upon a hypothetical sale.
On October 8, 2002, the Court denied Appellant's motion for reconsideration. The Court clarified, however, that if Appellee/Creditor Daimler Chrysler repossessed and sold the vehicle and subsequently asserted secured creditor status as to all/part of the deficiency balance, the appeal would be reinstated nunc pro tunc.
C. Repossession, Sale and Reinstatement of the Appeal
On September 16, 2002, the vehicle at issue was, in fact, repossessed by Appellee Daimler Chrysler. On October 1, 2002, the vehicle was sold at auction for eight-hundred dollars ($800.00). As such, Appellee DC filed an amended proof of claim for $4,487.89. Of this amount, DC asserted secured creditor status as to $4,366.08. Consequently, on November 15, 2002, Appellant's appeal was reinstated nunc pro tunc.[1]
The Court will now render a decision.

ANALYSIS
A. Jurisdiction and Standard of Review
Appeals from final judgments, orders, and decrees of the Bankruptcy Court lie to the district court for the district in which the Bankruptcy Court sits. 28 U.S.C. § 158. This Court reviews the Bankruptcy Court's factual findings for clear error, but revisits its legal conclusions de novo, See In re Rembert, 141 F.3d 277, 280 (6th Cir.1998); see also In re Palmer, 219 F.3d 580, 583 (6th Cir.2000). This case presents a pure question of law: whether, on uncontested facts, the Bankruptcy Court correctly extended In re Nolan, 232 F.3d 528 (6th Cir.2000) to situations in which a secured creditor affirmatively seeks relief from the automatic stay to repossess the debtor's property. A de novo review is thus appropriate.[2]
*884 B. Application of In re Nolan
As noted supra, DC's motion for relief from the automatic stay requested that it be paid on the deficiency balance, if any, as a secured creditor as set forth in the original confirmed plan, pursuant to In re Nolan, 232 F.3d 528 (6th Cir.2000). Upon objection by the Trustee, the Bankruptcy Court held that the rationale of Nolan was applicable and DC's deficiency claim would be treated as a secured claim. The Bankruptcy Judge stated:
Initially, the Court notes that both cases on which the trustee relies, White and [In re] Waller, [224 B.R. 876 (Bankr.W.D.Tenn.1998)] were decided before Nolan. In addition, the cases on which Waller relied, In re Jock, 95 B.R. 75 (Bankr.M.D.Tenn.1989), and In re Rimmer, 143 B.R. 871 (Bankr.W.D.Tenn.1992), were specifically rejected by the Sixth Circuit in Nolan.

The trustee attempts to distinguish Nolan on the basis that while in Nolan, the debtor voluntarily surrendered the collateral and then attempted to reclassify the secured claim, here the creditor is seeking relief from the automatic stay to repossess the collateral. The Court must conclude that under Nolan, this is a distinction without a difference. Both debtors here have defaulted. Under the trustee's rationale, the only way for DC to retain its fully secured claims is to do nothing while the value of the collateral continues to decrease, or to wait for the debtors to voluntarily surrender their vehicles. Nothing in the Bankruptcy Code imposes such burdens on a secured creditor.
In addition, the five part reasoning of Nolan is equally applicable to the circumstances before the Court. As Nolan observed, nothing in § 1329 permits the debtor to modify a secured claim and § 1325(a)(5)(B) requires that a plan propose to pay secured claims in full. Moreover, as in Nolan, it would be unfair to allow the debtor to reduce the secured creditor's claim when the secured creditor is not permitted to take advantage of any possible postpetition appreciation.
In re Adkins, 281 B.R. at 909-10.
(i) In re Nolan, 232 F.3d 528 (6th Cir.2000)
In Nolan, the debtor's chapter 13 plan was confirmed by the Bankruptcy Court on September 23, 1997. Under the plan, Chrysler Corporation had a secured claim in the amount of $8,200  $207.97 of the debtor's monthly payment was to be applied each month to this claim.[3] On August 26, 1998, Nolan filed a motion to modify her plan and to incur credit. Specifically, she sought permission to surrender her vehicle to Chrysler, to reclassify the deficiency owed on the vehicle as an *885 unsecured claim, and to incur credit in the amount of $10,000 to purchase another car. Chrysler objected, claiming that 11 U.S.C. § 1329 of the Bankruptcy Code[4] did not allow the debtor to reclassify, post confirmation, a secured claim as an unsecured debt.
On appeal, the Sixth Circuit acknowledged that federal district courts were split with respect to whether section 1329 allowed a debtor to modify a confirmed plan by surrendering collateral to a secured creditor (the value of which typically would have already been crammed-down), and then reclassifying any deficiency as an allowed unsecured claim to be paid back at the general pennies-on-the-dollar rate set forth in the plan. The Court then summarized and rejected the approach adopted by In re Jock, 95 B.R. 75 (Bankr.M.D.Tenn.1989) and its progeny, cases which allowed the debtor to surrender the collateral to the creditor and reclassify any remaining deficiency balance after sale of the collateral as an unsecured claim. As documented by the Bankruptcy Court Judge, the court set forth five fundamental deficiencies of the Jock position.
First, the court stated that section 1329 did not expressly allow the debtor to alter, reduce, or reclassify a previously allowed secured claim; instead, the statute only allowed the debtor to request an alteration of the amount or timing of specific payments. Id. at 532. The court stated: "Section 1329(a)(1) should not be read so broadly as to authorize the reclassification of claims." Id. at 533. In arriving at this conclusion, the court noted that 11 U.S.C. § 1325(a)(5)(C) of the Bankruptcy Code[5] only allowed the pre-confirmation surrender of collateral. Id. at 533 n. 8. "For section 1325(a)(5)(B)(ii) to provide any protection to the creditor when the debtor chooses to retain her collateral, the secured claim must not be subject to modification throughout the life of the plan." Id.
Second, the court noted that when a debtor elects to retain collateral, section 1325(a)(5)(B)(ii) mandates that the resulting secured claim is fixed in amount and status and must be paid once it has been allowed. According to the court:
Debtors seeking modification are attempting to bifurcate a claim that has *886 already been classified as fully secured into a secured claim as measured by the collateral's depreciated value and an unsecured claim as measured by the unpaid deficiency. This would negate the requirement of section 1325(a)(5)(B)(ii) that a plan is not to be confirmed unless the property to be distributed on account of a claim is not less than the allowed amount of the claim.
Id. at 533 (citation omitted).
Third, the court held that the proposed modification would contravene section 1327(a) of the Bankruptcy Code,[6] because a contrary interpretation "postulates an unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset." Id. The court noted that under the Jock approach,
debtors would obtain a double reduction in debt in many cases, because the creditor already experiences a cram down in valuation at the time of confirmation. There is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan.
Id. at 534 (emphasis in original).
Fourth, the court held that a contrary interpretation would be unfair because a secured creditor cannot seek to reclassify its claim in the event that the collateral appreciates in value. Id.
Finally, the court noted that a contrary conclusion would be at odds with the plain language of section 1329, which states that a plan may only be modified to increase or reduce the amount of "payments"; the section does not state that the plan may be modified to increase or decrease the amount of "claims." Id. The court stated:
Read with the benefit of proper term definitions, section 1329 clearly indicates that modifications after plan confirmation cannot alter a claim (a right to a remedy or payment of a certain total amount), but can extend or compress payments and reduce or increase the amount of the delivery of value planned as an eventual satisfaction for the creditor's claim.
Id. at 535 (emphasis in original).
As a result, the court held that a debtor cannot, post confirmation, voluntarily surrender collateral to a creditor and reclassify any remaining deficiency balance after sale of the collateral as an unsecured claim. Id. The court concluded: "Section 1329(a) only permits modification of the amount and timing of payments, not the total amount of the claim. This principle holds true as to the portion of a claim that is secured, where the claim is partially instead of fully secured." Id. (emphasis in original).
(ii) Applicability of Nolan in this case
Clearly, as noted by the Appellant/Trustee, the instant case is somewhat different than that addressed by the court in Nolan. In Nolan, the court was faced with a situation in which a debtor attempted to take advantage of the decline in value of the retained collateral by surrendering the collateral to the secured creditor and subsequently seeking modification of the confirmed *887 plan pursuant to section 1329 by having the remaining deficiency balance reclassified as an unsecured debt. Here, the debtor has taken no affirmative action. Instead, DC, the creditor, has elected to seek relief from the automatic stay in order to repossess the collateral after the debtor's default. The Court, however, agrees with the Bankruptcy Judge; according to the reasoning of the Sixth Circuit's opinion in Nolan, this is a distinction without a difference.[7]
As an initial matter, the Court finds persuasive the fact that the Sixth Circuit's opinion in Nolan implicitly rejected a bankruptcy court opinion which supports the Trustee's position and cited with approval a bankruptcy court opinion which conflicts with the Trustee's position.
In Nolan, the court cited In re Anderson, 153 B.R. 527 (Bankr.M.D.Tenn.1993), as a case which followed the Jock rationale (which the court explicitly rejected). Nolan, 232 F.3d at 531 n. 5. In Anderson, the creditor, post confirmation, obtained relief from the automatic stay. Id. at 527. The debtor filed a motion to modify the plan, arguing that the bank no longer had a secured claim. Id. at 528. The bankruptcy court agreed, noting that according to Jock,"the Bankruptcy Code clearly permits the Debtors to `reclassify' the Bank's claim as unsecured when the Bank has obtained possession of the collateral." Id. While acknowledging that Jock had been criticized, the court permitted the debtor to reclassify the claim, noting that (1) Jock remained the law in the district; and (2) unlike the cases criticizing Jock, where the debtor attempted to force a change, the creditor in Anderson took affirmative steps to repossess the collateral. Id. Thus, Nolan's implicit rejection of this case, which was premised on Jock's holding that the Bankruptcy Code permitted the post confirmation reclassification of claims, strongly supports the Bankruptcy Judge's ruling in this case.
Conversely, when adopting the alternative approach, the Sixth Circuit cited, with approval, In re Abercrombie, 39 B.R. 178 (Bankr.N.D.Ga.1984). Nolan, 232 F.3d at 532 n. 7. There, the debtor defaulted in making plan payments to General Motors Acceptance Corporation ("GMAC"). Abercrombie, 39 B.R. at 179. GMAC obtained relief from the automatic stay. Id. As in the instant case, an objection was filed with respect to the creditor's amended proof of claim  the proof of claim continued to classify the deficiency as a secured claim. Id. Consequently, the bankruptcy court was faced with the same issue as that presented in this case  could the status of an allowed secured claim be changed to an unsecured claim, post confirmation, after the creditor obtained relief from the automatic stay in order to repossess an automobile. Id.
Relying upon similar reasoning as that set forth in Nolan, the bankruptcy court concluded that the debtor could not effectuate such a reclassification. The Court noted that the interrelationship between sections 1325(a)(5) and 1327 required that the debtor's objection be denied. Id. Moreover, the court noted that while section 1329 allowed a debtor to modify the plan in certain circumstances, it did not provide the debtor with a means to "reclassify" a previously allowed secured claim as unsecured after the plan has been confirmed. Id. The court concluded that once confirmed, the claim remains secured, albeit reduced by whatever the creditor *888 received upon liquidation of the collateral. Id. at 179-80.
More importantly, however, the rationale behind the Nolan court's holding also supports a similar conclusion in the instant case. As in Nolan, the trustee in this case essentially seeks a reclassification of DC's partially secured claim.[8] However, the Sixth Circuit stated that "[s]ection 1329(a)(1) should not be read so broadly as to authorize the reclassification of claims." Nolan, 232 F.3d at 533. In fact, the Nolan court concluded: "Section 1329(a) only permits modification of the amount and timing of payments, not the total amount of the claim. This principle holds true as to the portion of a claim that is secured, where the claim is partially instead of fully secured." Id. at 535 (emphasis in original).
Furthermore, the Nolan court explicitly held that when a debtor elects to retain collateral and bifurcate a creditor's claim according to the collateral's depreciated value at the time of confirmation, section 1325(a)(5)(B)(ii) "mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed." Id. at 533. Thus, like Nolan, a reclassification "would negate the requirement of section 1325(a)(5)(B)(ii) that a plan is not to be confirmed unless the property to be distributed on account of a claim is not less than the allowed amount of the claim." Id. (citation omitted).
Additionally, like Nolan, an alternative result would be inequitable, shifting the burden of post confirmation depreciation to the secured creditor in situations in which the debtor voluntarily agreed to retain the collateral, but subsequently defaulted on the payments established under the confirmed plan. Once again, creditors would potentially be subject to a "double reduction" because the creditor often experiences a strip down in valuation at the time of confirmation. The inequity of this result is compounded by the fact that as in Nolan, a secured creditor cannot seek reclassification of its stripped down claim in the event that the collateral appreciates in value. Thus, as noted by the Bankruptcy Court Judge, if the trustee's position is accepted by the Court, "the only way for DC to retain its fully secured claim [ ] is to do nothing while the value of the collateral continues to decrease, or to wait for the debtors to voluntarily surrender their vehicles. Nothing in the Bankruptcy Code imposes such burdens on a secured creditor." In re Adkins, 281 B.R. at 909.
The trustee cites In re White, 169 B.R. 526 (Bankr.W.D.N.Y.1994), a pre-Nolan bankruptcy court decision from the Second Circuit, which arrived at the opposite conclusion. Moreover, the Court acknowledges that courts, both before and after Nolan, have disagreed with the approach taken by the Sixth Circuit. See In re Zieder, 263 B.R. 114 (Bankr.D.Ariz.2001); In re Townley, 256 B.R. 697 (Bankr.D.N.J.2000); But cf. In re Barclay, 276 B.R. 276 (Bankr.N.D.Ala.2001); In re Smith, 259 B.R. 323 (Bankr.S.D.Ill.2001); In re Goos, 253 B.R. 416 (Bankr.W.D.Mich.2000). However, this Court is bound by the analysis contained in Nolan; as such, this Court AFFIRMS the Bankruptcy Court's decision.

CONCLUSION
For the reasons stated, the Court AFFIRMS the Bankruptcy Court's April 11, 2002 Bench Opinion and the Bankruptcy Court's subsequent June 18, 2002 written supplemental opinion.
NOTES
[1] Appellant, in his supplemental briefing, made reference to the reasonableness of the amount received for the vehicle at auction. Issues related to the commercial reasonableness of the sale are not before this Court.
[2] Appellee argues that the Trustee lacks standing to bring this appeal. It is true that in general, appellate standing in bankruptcy cases is more limited than Article III standing  in general, in order to have standing to appeal a bankruptcy court order, an appellant must have been "directly and adversely affected pecuniarily by the order." In re Troutman Enterprises, 286 F.3d 359, 364 (6th Cir.2002). However, several federal circuits, including the Sixth Circuit, have recognized a trustee's broad power to appeal bankruptcy court orders. 11 U.S.C. § 307 states:

The United States trustee may raise and may appear to be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title.
A trustee has public interest standing  the U.S. trustee derives standing from his or her statutory responsibility to represent and protect the public. In re Revco D.S., Inc., 898 F.2d 498, 499-500 (6th Cir.1990); see also In re Donovan Corp., 215 F.3d 929, 930 (9th Cir.2000); In re Columbia Gas Sys., Inc., 33 F.3d 294, 295-97 (3d Cir.1994). As noted by a federal district court in the Eastern District of Michigan, after discussing 11 U.S.C. § 307:
I will not superimpose the "person aggrieved" standard upon this broad statutory grant of standing. The pecuniary interest requirement may make sense when applied to private parties, since they will generally be involved in a bankruptcy case only if they have a financial interest. However, as the Trustee now argues, the U.S. Trustee participates in a bankruptcy case not to protect a financial interest, but to help enforce the bankruptcy laws. The pecuniary interest requirement does not apply to the U.S. Trustee's statutory role.
In re PHM Credit Corp., 110 B.R. 284, 286 (E.D.Mich.1990). As such, the Trustee has standing to appeal the legal issue involved in the Bankruptcy Judge's order.
[3] The unsecured portion of Chrysler's claim, $4,091.45, was to be paid on a cents-on-the-dollar basis.
[4] This section provides, in relevant part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to 
(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments; or
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan,
(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
11 U.S.C. § 1329.
[5] Section 1325(a) provides that a plan shall be confirmed if:

(5) with respect to each allowed secured claim provided for by the plan 
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder.
11 U.S.C. § 1325(a)(5).
[6] Section 1327(a) states:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
11 U.S.C. § 1327(a).
[7] The Court acknowledges that the leading Chapter 13 commentator disagrees with the Sixth Circuit's conclusion in Nolan, and with this Court's conclusion in this case. See KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 264 (3d ed.2000); see also In re White, 169 B.R. 526 (Bankr.W.D.N.Y.1994).
[8] As noted supra, a portion of DC's claim was stripped down, resulting, per the confirmed plan, in a small unsecured claim with respect to the vehicle.